## ATLANTA NATIONAL BUILDING AND LOAN ASSOCIATION *v.* STEWART, tax-collector.

## SOUTHERN HOME BUILDING AND LOAN ASSOCIATION *v.* STEWART, tax-collector.

## SOUTHERN EXPRESS COMPANY *v.* STEWART, tax-collector.

## SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY *v.* STEWART, tax-collector.

1. The constitution of 1868 provided that "taxation on property shall be ad valorem only, and uniform on all species of property taxed." As long as that constitution was of force the General Assembly had power to exempt one species of property and tax another; and this exemption could be either express or result from a failure to provide that a given species of property should be taxed.

2. The constitution of 1877 provides that "all taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Under this constitution the General Assembly can not lawfully either expressly exempt from taxation, or accomplish this result by a failure to tax, any property except that which in the constitution itself the General Assembly is expressly authorized to exempt.

3. The tax of $1.00 for each telephone station or box, which is imposed by paragraph 2 of section 9 of the general tax act of 1896 upon telephone companies, is an occupation or business tax, and not a tax upon property.

4. The tax of two and one half per centum on the gross receipts of express companies, imposed by paragraph 1 of section 9 of the general tax act of 1896, is an occupation or business tax, and not a property tax.

5. Whether occupations shall be taxed, and if taxed how they shall be classified, are questions referred by the constitution to the General As-

sembly ; but all such taxes when levied shall be uniform upon the same class of subjects.

6. As the General Assembly has no power to exempt property from taxation by simply failing to provide proper machinery for the collection of the tax, a tax act will not be construed as failing so to provide unless such construction is absolutely demanded by the terms of the act.

7. The General Assembly has no power to declare that an occupation or business tax shall be levied upon certain classes of corporations, which when collected shall be received in lieu of all other taxes upon the property of such corporation.

8. All property of every nature whatsoever, except that which the constitution expressly declares the General Assembly has power to exempt from taxation, within the limits of this State, whether belonging to individuals or corporations, is not only subject to taxation but must be taxed, and the General Assembly has no power to declare otherwise. "Once for all, the constitution has enumerated the two classes of property, which enumeration the legislature, the courts, and the citizens must recognize as exhaustive; property, whatever its species, is simply exempt or subject to be taxed. If exempt, it pays nothing; if subject, the amount it shall pay is measured by multiplying the fixed rate into the actual value. The result will be, in every instance, that all persons who own taxable property of equal value will pay the same amount of taxes, and all who own more than others will pay more, and all who own less will pay less."

9. When a tax act provides machinery ample in its nature to bring under taxation all of the property of an individual, such machinery may be used to bring under taxation the property of corporations.

10. When a tax act provides machinery suitable to be used in bringing under taxation the property of all private corporations, such machinery may be resorted to for bringing under taxation the property of a corporation which the same paragraph of the law has unconstitutionally declared shall not be taxed in the manner therein prescribed.

11. The general tax act for 1896 provides for machinery which is ample in its nature to bring under taxation all such property of incorporated companies as is involved in the present case.

12. Has the General Assembly the power to levy a tax upon the property of certain classes of individuals and corporations, and withdraw from the various counties of the State the power to tax the same?

13. The tax imposed upon the stock of the stockholders of building and loan associations under section 7 of the general tax act of 1896 is a tax on the shares as the property of the shareholders, and is not a tax on the property of the corporations.

14. The General Assembly has power to levy a tax upon the shares of stock of an incorporated company as the property of the shareholders, and also a tax upon the property of the corporation.

15. The General Assembly has no power to provide that a tax shall be levied and collected upon the shares of the members of a private corporation and that such tax shall be received in lieu of all other taxes against such corporation.

16. The obligation which a borrowing member of a building and loan association has assumed to such association is an asset of the corporation ; and to the extent of its market value, whatever that may be, it is subject to the ad valorem tax which has been levied upon all property within the State.

17. Has the General Assembly the power to declare that certain designated property has no value, and therefore shall not be returned for taxation?

18. As the officers having in charge the affairs of a county are authorized to levy certain taxes without a recommendation of the grand jury, it is incumbent upon one who attacks a levy for county tax made by such officers without the recommendation of the grand jury, in excess of fifty per cent. of the State tax, to distinctly allege and prove that the excess was levied for some purpose for which such officers had no right to levy the tax without the recommendation of the grand jury.

19. The provisions of section 400 of the Political Code, to the effect that it is the duty of the county authorities "to see that by the time of the organization of [the] grand jury [at the spring term] they shall have prepared by their county treasurer, under their supervision, a statement of the financial condition of the county, and the amount of tax required to discharge the county liabilities for that year, which shall be by the treasurer presented to the foreman of the grand jury on the first day of court, for inspection of that body," are merely directory and not mandatory, and the failure of the county authorities to comply therewith does not affect the validity of the tax levy made during the year.

20. A chose in action owned by a resident of this State, although the debtor is a non-resident, is taxable as property in this State, no matter where the evidence of the debt may be actually located. There is nothing in the "interstate commerce clause" of the constitution of the United States, or the laws passed in pursuance thereof, which would have the effect of prohibiting the taxation of such property by the authorities of this State.

Argued December 22, 1899. — Decided January 30, 1900.

Petitions for injunction. Before Judge Lumpkin. Fulton superior court. October 21, 1899.

*Ellis & Ellis, W. A. Wimbish, Burton Smith, F. G. duBignon, Dorsey, Brewster & Howell,* and *Arthur Heyman,* for plaintiffs. *Luther Z. Rosser,* for defendant.

Cobb, J.   The four corporations named as plaintiffs in error each filed its petition in the superior court of Fulton county, alleging that the tax-collector of Fulton county was attempting to enforce the collection of taxes which they were respectively not required by law to pay, and praying that he be enjoined from so doing.   The injunction was refused in each

case and the plaintiffs excepted. The following sections of the general tax act of 1896 are involved in the discussion which will follow:

"Section 1. Be it enacted by the General Assembly of the State of Georgia, that the Governor be authorized and empowered, with the assistance of the comptroller-general, to assess and levy a tax on the taxable property of the State, for each of the fiscal years eighteen hundred and ninety-seven and eighteen hundred and ninety-eight, of 3 45-100 mills; and the Governor be, and is, hereby authorized and empowered, by and with the assistance of the comptroller-general, to assess and levy, in addition to the foregoing general State tax, a tax of 2 50-100 mills, for each of the years eighteen hundred and ninety-seven and eighteen hundred and ninety-eight, on all taxable property of this State, for the purpose of raising the funds necessary to meet the appropriations of this General Assembly for educational purposes in instructing children in the elementary branches of an English education only."

"Sec. 3. Be it further enacted by the authority aforesaid, that the taxes provided for in paragraphs 1 and 2 of this act shall be returned to the tax-receiver in the county of the residence of the person liable to such tax, and shall, by the receiver of tax returns, be entered upon his digest of taxable property."

"Sec. 7. Be it further enacted by the authority aforesaid, that the president of all building and loan associations, or other associations of like character, shall be required to return to the tax-receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof (upon which, as shown by the books of such associations, no advance has been made or money borrowed thereon by the individual stockholders therein), to be taxed as other moneyed capital in the hands of private individuals is taxed; *provided*, that no tax shall be required of building and loan associations to be paid upon any portion of their capital which has been loaned or advanced to a shareholder upon real estate, upon which real estate tax is payable by said shareholders; *and provided further*, that the taxes required by this section shall be in lieu of all other taxes and

licenses, whether State, county, or municipal, against said associations, except a business license by the town or city in which the principal office of any such association is located, and except a fee required to be paid the State treasurer by act approved October 19, 1891."

"Sec. 8. Be it further enacted by the authority aforesaid, that the presidents of manufacturing and other incorporated companies, or their agents, other than railroad, insurance, telegraph, telephone, express, sleeping and palace car companies, shall be required to return all their property whatever of their respective companies at its true market value to the tax-receiver of the county where the same is located, or where the principal business of each company is located, to be taxed, save and except that all canal or stock water navigation companies shall make, through their respective executive officers or stockholders in possession of the same, returns to the tax-receiver of each county in which the same is located, or through which the same shall pass, in whole or in part, of the right of way, locks and dams, toll-houses, structures, and all other real estate owned or used by the company or the stockholders thereof; *provided,* this act shall not make subject to taxation any property of canal or navigation companies which is not subject to taxation by the laws of this State as now existing."

"Sec. 9. Be it further enacted by the authority aforesaid, that all persons or companies, including railroad companies doing an express or telegraph business and charging the public therefor, in this State, shall pay 2½ per centum on their gross receipts, and all persons or the superintendent or general agent of each telegraph or express company, or the president of each railroad company doing such business in the State, shall make a quarterly return under oath, as follows: On the last day of March, June, September, and December, in each year, to the comptroller-general, showing a full account of their gross receipts during the quarter ending on such date; and said taxes herein levied upon said gross receipts as shown by said quarterly returns shall be paid by the respective persons or companies to the comptroller-general at the same time of making such returns. The gross receipts herein named shall,

be construed to mean the full amount of all money received from all business done within this State.    If any person, super-intendent, agent, or president, as the case may be, whose duty it is to make returns under this section, shall fail to do so within thirty days after the time herein required, such persons, super-intendent, agent, or president shall be liable to indictment, and upon conviction shall be punished as prescribed in section 1039 of volume III of the Code of 1895.    Second.  That each telephone company or individual operating telephone in this State shall pay a tax of one dollar for each telephone station or box, with instruments complete, rented or used by their subscribers, and the superintendent or general manager of the company shall make returns under oath, and payments to the comptroller-general on the dates named in the first paragraph of this section."

"Sec. 15.   Be it further enacted by the authority aforesaid, that in returning property for taxes all property shall be returned at its value; promissory notes, accounts, judgments, mortgages, liens of all kinds, and all choses in action shall be given in at their value, whether solvent or partially solvent."

With the order refusing to grant the injunction the judge filed a written opinion, which is in the record.   We have arrived at the same conclusion that the learned and able judge of the Atlanta circuit reached in regard to the law of these cases; and as his opinion is so complete and satisfactory on every material branch of the case, we adopt the same as the opinion of the court and do not deem it necessary to add any-thing to what he has said.   That opinion is as follows:

"Four cases are before me, all involving the collection of State and county taxes for the year 1898.

."First.   The Southern Bell Telephone Company filed its bill to enjoin the enforcement of an execution issued by the tax-collector of Fulton county for State and county taxes. The company has made returns to the comptroller-general, as provided in the general tax act of 1896, in division 2 of section 9, as to the number of boxes or stations rented or used by its subscribers, and has paid a tax of one dollar for each station or box.   It has made no returns of property for taxation to

the tax-receiver. The tax-collector of Fulton county issued an execution against the American Bell Telephone Company for State and county taxes, on the ground that it was a defaulter, having failed to return certain property for taxation. The Southern Bell Telephone Company files its petition alleging that it is the lessee of the property referred to from the American Company, and that under its contract of lease the duty of paying any tax devolves upon it, and that the execution issued against the American Company should be enjoined. This is the first case.

"Second. The second case is that of the Southern Express Company. It alleges that it has made returns as required by section 9 of the tax act of 1896, and paid a tax of two and one half per cent. on its gross receipts, and that it is not liable for any further tax. It has made no return to the tax-receiver; and thereupon the tax-collector of Fulton county has issued against it an execution for State and county taxes, on certain property located in this county. That is its case.

"Third. The other two cases are based on the same principles, and are substantially alike. These are the cases of the building and loan associations. They allege that they have made returns as provided in section 7 of the tax act of 1896, and that they have returned to the tax-receiver of Fulton county, at its true market value, the stock of the association owned by the stockholders thereof, upon which, as shown by the books of the association, no advance has been made or money borrowed by the individual stockholders, and have been taxed upon this. They have also returned certain other property. The tax-collector has issued against these associations respectively, for State and county taxes, tax executions, alleging that they have failed to make returns of their taxable property; and against the enforcement of these executions, petitions seeking injunction have been filed. These make up the cases respectively.

"I will not stop to discuss, comparatively speaking, what may be termed the minor points in the cases; though, standing alone, they might be of considerable importance. For instance, the question whether the Southern Bell Telephone Com-

pany has any status to file a petition to enjoin an execution against the American Bell Telephone Company on the ground that it is a lessee; or the question raised by the Southern Express Company as to the valuation put upon its property; or on the question raised as to whether the interstate commerce laws have anything to do with the case. As to the last, I will deal with it no further than to say that if a man in New York owes a man in Georgia on a promissory note, or a mortgage, I know of no reason why the Georgia man is relieved from paying taxes upon it. I do not perceive that the interstate commerce laws have anything to do with it. The fact that the creditor resides in one State and the debtor in another does not free the creditor from paying on his property in the State and county of his residence. *City Council of Augusta* v. *Dunbar*, 50 *Ga.* 387, 392. These questions I will not stop to discuss at length, because, comparatively speaking, they are of minor importance; but will pass at once into the great questions involved in the case.

"These cases involve several questions, but the most important may be reduced to two: (1) Do certain provisions of the general tax act of 1896 impose or seek to impose property or valuation taxes; or do they impose business or occupation taxes? (2) If they seek to provide for property taxation, or to exempt property from other taxes by valuation, are they unconstitutional? The first question applies more especially to the cases of the Telephone Company and the Express Company; and the latter applies to those cases, and also to that of the Building and Loan Associations. For convenience, let us take up the case of the Telephone Company first. The provision of the act of 1896 on this subject is contained in section 9, subsection 2, which reads as follows: 'That each telephone company or individual operating telephones in this State shall pay a tax of one dollar for each telephone station or box, with instruments complete, rented or used by their subscribers; and the superintendent or general manager of the company shall make returns under oath, and payments to the comptroller-general, on the dates named in the first paragraph of this section.' Can this be claimed to be a tax on property? There is not the slight-

est hint that the value of the box or station has any connection with the tax. For a station or box worth twenty-five dollars the company would pay one dollar; for another costing or worth a thousand dollars it would pay exactly the same. No effort is made to ascertain value, or to deal with property as to its value. The company might have buildings and real estate worth a million of dollars, and furniture and other property worth ten thousand dollars, or it might have no property and operate with rented property, but this clause has no reference at all to property, and would be the same in either case. It simply refers to the number of stations or boxes rented or used. A tax on a person, graduated according to the number of a certain kind of articles, apparatus, or machines employed by him or it, without regard to value, is unquestionably not a property tax, but an occupation tax. *Goodwin* v. *Savannah*, 53 *Ga.* 410, 414. This view is strengthened by the fact that the same tax is levied alike on each telephone company or *individual* operating telephones. Will it be claimed that if an individual operates a telephone business, all of his property of every sort and kind is free from taxation, except to pay one dollar a box for the telephones operated by him? I conclude that the tax imposed upon telephone companies, or individuals operating telephones, of one dollar per box or station, is an occupation tax, and has no relevancy to the property tax which each individual or company must pay like all other persons. Further, the returns are to be made quarterly to the comptroller-general, not annually to the tax receiver or collector. The whole mode and method of returns and collections is entirely different from property taxation.

"Next let us consider briefly the case of the Express Company. Here the charge is measured by gross receipts. This, too, is an occupation or business tax. It has no reference whatever to the amount of property of the company, or its value. It deals with the amount of business done; not with the amount of property owned. Suppose the company should own no property, but continued business with rented property on which the owner paid the tax, would it not be liable to this tax on gross receipts? If so, clearly it is not a tax upon prop-

erty, but is a tax upon occupation or business. *Waring* v. *Savannah*, 60 *Ga.* 93; *Mayor etc. of Rome* v. *McWilliams*, 52 *Ga.* 251, 273–5; *Joseph* v. *Milledgeville*, 97 *Ga.* 513; *Mayor etc. of Savannah* v. *Hartridge*, 8 *Ga.* 23; Cooley on Taxation (2d ed.), 571. In *Gould* v. *Atlanta*, 55 *Ga.* 678, a query was put, but no ruling made. Even if a tax graded by receipts from sales, i. e., the purchase-price, may be closely assimilated to a tax on the thing sold, this could not apply to receipts, not from sales, but from business done not involving selling. The act provides 'That all persons or companies, including railroad companies doing an express or telegraph business, and charging the public therefor, in this State, shall pay $2\frac{1}{2}$ per centum on their gross receipts,' etc. Now suppose an individual or company worth one million dollars in property should do a small express business, receiving say one thousand dollars per annum. Will it be contended that the payment of two and one half per centum on this thousand dollars would relieve him or it wholly from all property taxation? But perhaps it may be suggested that it applies to such property as may be in some way used in connection with the express business. Let us see: Suppose a railroad company should do a little express business (and, for the purpose of taxation, the smaller the business the better for the company), would the payment of two and one half per cent. on the receipts relieve it from taxation on its road-bed, depot, and rolling-stock, although all of them were used in connection with the storage and carriage of express matter? It will be observed that the act, as already stated, says, 'all persons or companies, including railroad companies doing an express or telegraph business,' and therefore puts a railroad company doing that business on an equality with express companies. If all were not exempt, what part would be? The engines pull the expressed freight for long distances, just as the horses for short distances; the cars haul the freight on its long journey, as the wagons do in delivery. The engines and cars can not move or haul express matter without a road-bed, and the freight can not be stored except in depots or warehouses. Where is the line to be drawn? Shall it be said that if the business is done by a railroad company, the tax imposed

by this section is a business tax and does not give it relief from property taxation, but if done by another company that it is a property tax, or has the effect of exempting its property or taking the place of taxation on its property? Is it a property tax if done by one kind of corporation, and a business tax if done by another kind of corporation?

"Again, the returns and payments are to be made quarterly, and a failure to make such returns for thirty days is an indictable offense. It is quite common to make a failure to obtain a license, or the doing of business without a license, or without the payment of a license or occupation tax, penal; but if it has ever been sought, in the history of this State, to enforce the return and payment of taxes on property by indictment, I have not heard of it. It has been held in one case that a municipality could not tax income, although its charter authorized it to levy a tax on all property, and that the two were not identical. *Mayor etc. of Savannah* v. *Hartridge*, 8 *Ga.* 23. I am of the opinion that the taxes imposed on express and telegraph companies, under section 9 of the general tax act of 1896, are not property taxes at all, nor have anything to do with property taxation. If it be said that the payment of these taxes, and also of ad valorem property taxes, would be oppressive and burdensome, the reply is, that, if this be true, the matter of classifying and regulating occupation taxes is left by the constitution to the legislature, with the single restriction that there must be uniformity within the class. If an occupation tax is too high as to any class, the legislature can lower it; if too low, they can raise it. But the constitution confers no power on the legislature to say that "we have charged you too high an occupation tax; therefore we will exempt your property from taxation." Let it be noted that, as to the two classes of companies above referred to, there is not the slightest indication that there is any effort in the act to arrive at the value of their property, or to tax their capital, or their stock, or anything as a representative or equivalent of property value. But as to them it is a plain, bald charge upon their business or occupation, arrived at in the one case by counting the number of boxes or stations, and in the other by the amount of

business done, or receipts therefrom, regardless of property owned. If it be said that the intention of the legislature was to accept this in lieu of an ad valorem tax, it seems to me that the constitution of this State does not authorize a tax on property to be measured in any way except ad valorem; that is, according to value. Civil Code, § 5883. I will discuss the constitutional question somewhat further in considering more particularly the cases of the building and loan associations; but suffice it for the present to say that, if I have made it clear that the amounts charged against these companies under the act of 1896 are fixed entirely without reference to the amount of property owned by them in this State, or its value, then either it is an occupation tax and has no reference to property taxation, or else it is a property tax graded not according to the value of the property, while the constitution says that all taxes on property shall be according to value. To hold that these are occupation taxes leaves them to stand as constitutional taxes; and the question of collecting additional property taxes will not affect them. To hold that they are property taxes, and not according to valuation, would make the whole tax unconstitutional. I think it proper to give the section a construction which will hold it constitutional. Thus construing the act, we have valid, constitutional business or occupation taxes imposed on express and telephone companies.

"The next question is whether anything in the act prevents taxation of the property of these companies within the taxing district. On this point there are two contentions on behalf of the companies: (1) That the legislature intended these taxes to take the place of, or as a substitute for, or commutation of ad valorem taxes. But a moment's thought will show that this is only another way of saying that, while it is true the constitution provides that all property shall be taxed according to value, and no property shall be exempted (except as specified in it), nevertheless the legislature may levy a tax or accept a sum for or in lieu of a property tax, without reference to value; or may accept a business tax and exempt the property of the person paying it. The legislature can not do this. (2) The second contention is, that, even if the position thus contended

for by the companies be untenable and not in accordance with the constitution, nevertheless there is no machinery provided for the collection of an ad valorem tax against these companies. The eighth section of the act provides that the presidents of manufacturing and other incorporated companies, or their agents, other than certain companies named, including express and telephone companies, shall make returns to the tax-receiver of the county where it is located, or its principal place of business is located, of 'all their property whatever of their respective companies, at its true market value, . . to be taxed for State and county purposes, as other property in this State is taxed.' It is said that this excludes or excepts these companies from making such returns, and leaves no method of collecting ad valorem taxes from them; in the language of the briefs, 'no machinery' for doing so. An effort is made in argument to separate the State and county tax, and, on the assumption that no ad valorem tax is due the State, to attack the county as without power or means to proceed. But if what I have said above be correct, the State stands side by side with the county as to this ad valorem tax. If the construction contended for be correct, then we would have a general tax act providing a mode and machinery for collecting ad valorem taxes on only a part of the taxable property of the State, and the result would be that the whole act would be unconstitutional and void; for an act which provides for an ad valorem tax on only a portion of the taxable property of the State would plainly be contrary to the provisions of the constitution. If the construction contended for were correct, therefore, the State would have no valid tax act, and the whole tax system of the State would be unconstitutional. No such construction will be put upon the act unless necessary. What is the correct construction, then? This: The act of 1896 does provide for the assessment and levy of a uniform ad valorem tax on all the taxable property within the State. This does furnish authority sufficient to cover all taxable property, and it is expressly so declared.

"Section 1 of the tax act provides, 'That the Governor be authorized and empowered, with the assistance of the comp-

troller-general, to assess and levy a tax on the taxable property of the State,' covering the taxable property of the State. Section 2 provides, 'That, in addition to the ad valorem tax on real estate and personal property as required by the constitution and provided for in the preceding section, the following specific taxes shall be levied,' and so forth; thus covering all the property in the State, the taxation of which is contemplated by the constitution. Section 15 provides that, in returning property for taxation, all property shall be returned at its value, etc. If, then, there is an act broad enough to cover all property, and there is an attempt to except some from it, the act will stand, but the exception will fall. In the case of *Verdery* v. *Summerville*, 82 *Ga.* 138, Chief Justice Bleckley, delivering the decision, on page 142 says, in dealing with an ordinance which taxed realty only: 'By taxing realty only, the ordinance by necessary implication exempts personalty, and the tax officers whose function it might be to collect taxes for the municipality would be compelled to treat personalty as beyond the purview of the ordinance. Were the terms of the ordinance comprehensive enough to embrace all property of both kinds, and then by some further provision one kind were expressly exempted, the latter provision might be treated as void, and the tax on both kinds collected.' It may be doubted whether the legislature could constitutionally pass an act that the county should not impose an ad valorem tax on certain special property within its territory. It was contended by the attorney for the county that it could not be done, and it may be questioned, if the State can withdraw from counties the power to tax certain property, or the property of certain persons natural or artificial, why not of all? Where is the limit? It is asked, if the State may reserve to itself and withdraw from the county the right to tax property of telephone or express companies within its limits, why not that of brokers, private bankers, wholesale merchants, retail merchants, etc., etc., etc., ad libitum? It may also be suggested that possibly there may be a difference between the legislative power as to municipal corporations (which may be created, or abolished, or changed by the legislature), and as to counties, which under

the constitution of 1877 the legislature can neither create nor abolish. But without stopping to discuss whether the legislature can exclude a county from taxing certain property within its limits, in these cases, I have sought to show that, in so far as the act seeks to exempt or except certain property, the exception is not a mere withdrawal of the county's authority, but applies to the ad valorem taxation of the State as well as the county, and is. altogether void to the extent of the exception. The ruling as to taxation of railroads in *Columbus So. R. Co.* v. *Wright*, 89 *Ga.* 574, is quite different from this case. There the purpose was to arrive at a fair valuation for taxing purposes of. property partly located and partly shifting, such as rolling stock and the like; and the mode of arriving at it, while in some respects different from the usual mode, was yet in substantial accord with it.

"If a legislature can not exclude certain property directly from taxation ad valorem, it would seem that it can not do so indirectly by some process of withdrawing 'machinery.' To say that a legislature can not pass a constitutional act exempting a piece of property, but can effect the same purpose by saying to the taxing authorities, 'You shall not use the ordinary machinery of taxation or any other mode as to that property,' is a mere variation of terms, and not a variation, it seems to me, in substance. The general tax laws furnish general machinery. An unavailing effort to withdraw one cog from the machinery will not stop it, but it will grind on the same. The cases of *Sav., Fla. & W. R. Co.* v. *Morton*, 71 *Ga.* 24, *City of Albany* v. *S., F. & W. .R. Co.*, 71 *Ga.* 158, *County of Houston* v. *Central R. Co.*, 72 *Ga.* 211, *City of Atlanta* v. *Ga. P. R. Co.*, 74 *Ga.* 16, and *City Council of Augusta* v. *Central R. Co.*, 78 *Ga.* 119, did not discuss or decide any constitutional question, and, so far as the reports indicate, no constitutional question was raised in them, but they arose merely on the construction of acts of the legislature. It is suggested in argument that the Supreme Court would not have held as they did had the acts been unconstitutional; but it is well known that neither the Supreme Court nor any other court is in the habit of raising constitutional questions affecting the validity of legislative acts,

ex mero motu, especially where the revenue of the State is in-
volved and when they are simply asked to construe an act.
Indeed, courts do not generally decide on the constitutionality
of an act at all, unless it is necessary to do so.   The rulings of
the Supreme Court are, of course, to be accepted as correct, but
they are to be accepted as rulings upon the points which were
before them, viz.: what was the construction to be given to
those acts, and whether under those acts the counties and towns
were given authority with respect to those railroad taxes.·

"I now come more especially to consider the case of the build-
ing and loan associations.   In argument it was contended that
the tax imposed on building and loan associations was in fact
a property tax, and that the act provided an equitable mode
of arriving at a valuation of the association's property, and was
not contrary to the uniform and ad valorem clause of the con-
stitution of the State.   In construing constitutional provisions
which change former provisions, as in construing other laws,
there are certain guiding rules.   Among these I may mention
a few.   One is, to consider the old law, the mischief, and the
remedy; another is, to consider the words of the instrument;
another is to consider its reason and spirit.   Let us look for a
moment at the present constitutional provisions as to property
taxation, in the light of these rules.

"The constitution of 1868 contained the following clause
(section 5019, Code of 1873): 'The power of taxation over
the whole State shall be exercised by the General Assembly
only to raise revenue for the support of government, to pay the
public debt, to provide a general school fund, for common
defense, and for public improvement; and taxation on prop-
erty shall be ad valorem only, and uniform on all species of
property taxed.'   The last words of the section may well be
repeated, 'and uniform on all species of property taxed.'
This was the old law.   What was the mischief arising under it?
It gave the legislature power to classify, not only occupations
or business for taxation, but also property (as has been ruled
by the Supreme Court).   Its uniformity clause only extended to
uniformity within the classes, but left power in the legislature
to create a diversity of classes.   Thus some property might

be taxed one way, and some another, and some not at all. *Waring* v. *Savannah,* 60 *Ga.* 93. I do not stop to discuss whether legislatures did prefer one class of property of persons natural or artificial to another, in taxing property. They had the power, and that was enough, in the opinion of the framers of the new constitution, to call for a remedy. What was the remedy? In 1877 the people of the State held a constitutional convention, prominent among the members of which were those two great Georgians, Robert Toombs and Charles J. Jenkins, and a new constitution was adopted which contained the following provisions: 'All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.' Civil Code, § 5883.

"Section 5884 states what property the legislature may exempt from taxation. Section 5886 provides that 'all laws exempting property from taxation, other than the property herein enumerated, shall be void.' (See also *Mundy* v. *Van Hoose,* 104 *Ga.* 297.) Section 5887 provides that 'the power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the State shall be a party.' The language would seem to be plain, its purpose unmistakable, to require all property to be taxed not only uniformly, but ad valorem. It left no loophole to escape. There was to be no classifying of property; no exempt property except that specifically allowed to be exempted by the constitution. The rule was absolute: Property, tax according to value.

"In the case of *Mayor etc.* v. *Weed,* 84 *Ga.* 683, the court makes use of the following language: 'The legislature or municipal authorities may classify all subjects of taxation exclusive of property, and may tax or exempt any or all such classes, with a uniform rate upon the whole of each class taxed. Taxation on property must be upon all not exempted in the constitution, with a uniform rate upon all kinds.' In the opinion, on page 686, the present Chief Justice says: 'If property is taxed, all of it must be taxed except that exempted in the constitution. The legislature or municipal authorities can make

no exemption as to property; it must be taxed, and taxed according to its value. Though property is a subject of taxation, the constitution treats it as but one subject, and prescribes the rule of uniformity as to it by saying that all of it subject to be taxed shall be taxed ad valorem.' In *Verdery* v. *Summerville*, 82 *Ga.* 138, and following pages, the opinion was rendered by Chief Justice Bleckley. On page 139, he makes use of the following language : 'Property subject to be taxed is treated as one single class, and the only division of it contemplated or allowable is by territorial lines, coinciding with the territorial limits of the various authorities by which the taxes upon it are levied.' On page 140, discussing the difference between the constitution of 1868 and that of 1877 on this subject, he says : 'Another important difference between the two constitutions tends to show that property subject to be taxed is all to be taxed alike when any of it is taxed. That difference is, that the older constitution did not limit or prohibit exemptions, but the younger does. It specifies certain property that may be exempted, and then declares that laws exempting any other shall be void. Thus, the only classification of property, relatively to taxation, that is made or authorized, is into exempt property and property subject to be taxed; and taxation on all property subject to be taxed is required to be ad valorem, that is, according to value. Once for all, the constitution has enumerated the two classes of property, which enumeration the legislature, the courts, and the citizens must recognize as exhaustive; property, whatever its species, is simply exempt or subject to be taxed. If exempt, it pays nothing; if subject, the amount it shall pay is measured by multiplying the fixed rate into the actual value. The result will be, in every instance, that all persons who own taxable property of equal value will pay the same amount of taxes, and all who own more than others will pay more, and all who own less will pay less.' If this is not a clear, plain, and pointed statement, I despair of attempting to express the idea more strongly. If any part of the act of the legislature is contrary to the constitution, that instrument in express terms provides that it shall be the duty of the courts to so declare it. Civil Code, § 5733.

"I am not prepared to hold, nor is it necessary in this case to hold, that where property is transitory in its character, like much of that belonging to railroad and sleeping-car companies, the legislature may not fix some just and equitable rule by which to arrive at a valuation at the time for taxation.    Possibly it may be competent to provide against taxing the shares of stock where all the property which gives them value has been taxed.    I do not decide as to this, because it is not before me directly.    But in this case, the act provides in terms, not for relieving shareholders against what might be claimed to be double taxation, if the company had paid on everything conferring value on the share; but, on the contrary, it provides for the company to pay only on the market value, not of its property, but of shares belonging to certain of its stockholders on which no loans have been made.    It is exactly a reverse proceeding.    Suppose it be true that, if all the property which gives shares of stock a valuation has been paid upon, it is equivalent to paying on the shares, and the owners need not pay again, or at least that the legislature may provide that they need not pay again, the provision of this act is that if the company will pay on the market value of the shares of some of its stockholders it need not pay on any of its property.    It will be perceived that the two things are not identical, or even similar.    Does this represent the value of all the property or assets of the company?    Is it a rule for arriving at a just and fair valuation of the property of the company?    If a stockholder in any other corporation borrows money and pledges to it his stock or mortgages land as security, is not his debt an asset of the company?    It is true he occupies a dual position of stockholder and debtor, but that does not make the debt any the less an asset of the company, although as a stockholder he may be affected pecuniarily by the tax.    Again, suppose a loan is only made on shares to half their value, surely they have some value left.    Yet, under the terms of section 7 of the act, they are not to be considered at all.    It only provides for returning for taxation shares on which no loans have been made. Under the modern system of building and loan associations, loans are not confined to the old method of being made solely

by 'selling' the money, or equivalent methods, and made to the full value of the stock; and I believe it appears in the record that in these companies loans have been made in a number of cases on stock alone, and not on real estate security. Now, there is no rule of law that the associations are bound to lend to the full value of the stock. Indeed, ordinary business experience would indicate that they would probably not do so; but that they would lend to half the value of the stock, or one third the value, or the like, where no real estate security was taken, and the only security was the stock itself. Nevertheless, under the terms of this section of the act they are to exclude altogether from taxation such stock, or what the company holds as its representative value.

"Every person who knows anything about these associations, knows that whenever a borrowing stockholder defaults in payment, and is sued by the association as a corporation, it gets a judgment against him and his property; and yet that claim is not to be considered as an asset—a loan on which suit can be brought, judgment obtained, and property sold, is treated as not an asset. It is not a mere advance of his share. It is an actual loan, and he is sued and his property sold if he does not pay it. It seems to me that the market value of shares owned by stockholders, on which no loans at all have been made, does not and can not represent the market value of the entire property of the company—it does not furnish a rule for so doing. That stock as such is not synonymous with the property of the company or its assets, see *Mayor etc. of Macon* v. *Construction Co.*, 94 *Ga.* 201. In making up the amount a borrowing member is due at any time, when he is sued, certain charges are made against him, and he is credited with something before judgment is taken. What? The value of his stock. Yet here is stock with an actual value, and a value which is credited to the defendant when he is sued on his loan, and yet it is totally excluded from the return under this section of the act. The most positive proof that the market value of shares of non-borrowing members is no criterion or measure of the total property of the association is to be found by referring to the petition itself. Turning to the petition of the

Southern Home Building and Loan Association against Stewart, tax-collector, we find that in section 4 there is the following allegation: 'That in compliance with the requirements of this act, petitioner returned for taxation ·by the State and county for the year 1898 the market value of all its unadvanced shares within the jurisdiction of the authority levying the tax, and in addition thereto returned for separate and independent taxation by the State, county, and city all of its other property located within the jurisdiction and not represented in the market value of taxable shares (excepting as hereinafter stated),' so that it concedes that there is property not represented in the market value of shares on which no loans have been made.    Also in paragraph 5 it is stated that 'Petitioner failed to return for taxation for year 1898 the value of its office furniture and fixtures, which it is now advised by its counsel it should have done.    Petitioner avers that its office furniture and fixtures on the taxing day in the year 1898 were of the value of $1,400, which at the tax rate for that year amounts to $——— due the State of Georgia, and $——— due the county of Fulton as a tax thereon, which several sums with penalties and costs it has tendered to the tax-collector of said county, and now here tenders and offers to pay in court.'

"The act specifically limited the return required to the market value of the shares not borrowed on, and declared that this should be in lieu of all other taxes.    If the section of the act is unconstitutional, can it be helped or rendered constitutional by saying that this does not represent the property of the association except in part, but the association is willing to pay on some more which they concede they have?    When they apportioned the assets on their books so as to give a value to the shares, did they apportion nothing to shares of borrowers?    If not, how will the whole stock ever mature?    If they did so apportion any amount to shares borrowed on, then palpably the market value of non-borrowing shares does not represent the total assets so apportioned.    It is suggested that the act intended that all other property not going to make up the market value of stock according to its system of bookkeeping was not sought to be excepted.    But such is not the language of the

act. Nor do I understand that an act can be made constitutional or not as bookkeeping may vary. It is to be remarked that, while this association may perhaps loan exclusively to members, an act has been passed which, if valid, authorizes these associations to loan to others than members at more than eight per cent. Civil Code, § 2388. The section of the tax act under consideration takes no account of this. Building and loan associations, as they now exist, bear little relation or resemblance to the original associations. Section 2398 of the Civil Code provides as follows: 'The name "building and loan association," as used in this article, shall include all corporations, societies, or organizations or associations doing a savings and loan or investment business, on the building society plan, viz., loaning its funds to its members, whether issuing certificates of stock which mature at a time fixed in advance or not.' If this means what it says, it looks very much like declaring corporations, societies, organizations, or associations which do a business of loaning its funds to the members, without regard to maturing stock, to be building and loan associations. How is section 7 to be applied to them? Note that this section of the tax act includes not only building and loan associations, but 'other associations of like character.' If every corporation or association that loans money to its members regardless of maturity of stock is a building and loan association, and a building and loan association may also lend to outsiders, adding principal and interest together and dividing the whole into monthly payments, what sort of an institution is an association 'of like character'? I have looked with some degree of curiosity, and I have only found the expression, outside the tax act, in the section of the code referred to, to wit section 2388, where it provides that building and loan associations and 'other like associations' may lend not only to members, but to parties not members, in a manner which the Supreme Court has recently held was usurious in others. There may be other places where the expression is used that I have overlooked, but this is the only place I have found where is added to building and loan associations the expression 'other like associations,' or 'of like character.' The only thing of 'like char-

acter' referred to in section 2388 seems to be the right to charge usury.

"It is true Chief Justice Bleckley, in *McGowan* v. *Sav. Mut. Loan Asso.*, 80 *Ga.* 515, after deciding the point raised, discussed somewhat the question of the constitutionality of the proviso of the act then considered as to real estate loans, and suggested a construction as a possible solution. The constitutional question does not seem to have been directly involved in the case, and yet even an expression of opinion from so able a jurist is worthy of serious consideration, whether it be a direct adjudication or not. But in the wide diversity of plans adopted by building and loan associations now, I hardly think he would hold as a matter of law that all borrowing shares were loaned on to their full value, or had no value. He would, I suggest with great respect, hold that whether a share (whether borrowed on or not) has a market value is not a question of law, but a question of fact for the taxing authorities. If market value of shares is to be taken as a measure of value of all property of the association, should it not be the value of all shares, leaving the question whether any particular shares were of value to be determined as a matter of fact and not a matter of law? Can an act of the legislature declare that certain property has no value? People's L. & H. Asso. *v.* Keith,. 28 L. R. A. 65. I may remark that Chief Justice Bleckley treated the proviso as of doubtful constitutionality, and only to be sustained by so construing it as to exclude nothing which it appeared ought to be included. The act as it then existed has been added to by a second proviso, expressly declaring that this shall be in lieu of all other taxes; and also the act of 1891 has been passed defining building and loan associations as above stated. So that since that decision there have been two very marked and material changes. The first is that the doubtful proviso has been rendered more doubtful by the second proviso excluding what Judge Bleckley seemed to think ought to be included, and also by an act of the legislature defining what building and loan associations are, and very much broadening the definition.

"I have found some difficulty on the question (raised by

the building and loan associations alone) on the county tax levy; but as they recognized it and paid a portion of the tax assessed under it, and as the charges are not very specific as to what excess over a legal levy there was, if any, and the year when a new levy could be made, if this be invalid, has passed, and except in a clearly made out case courts do not incline to grant ad interim injunctions against the collection of tax executions, I decline one in this case. *Decker* v. *McGowan*, 59 *Ga.* 805; *Hawkins* v. *Jonesboro*, 63 *Ga.* 527; *Walden* v. *County of Lee*, 60 *Ga.* 296; *Arnett* v. *Griffin*, 60 *Ga.* 349; *Verdery* v. *Summerville*, 82 *Ga.* 138. I think section 400 of the Political Code, if applicable to these commissioners, only directory, and that the entire right of the county to collect any revenue for the year will not be lost by a failure to comply with it. Besides, the petitions seek to enjoin the collection of certain executions as a whole, in which are included both State and county taxes. Now, if I have succeeded in showing that, under the law, the defendants owed State taxes, then these executions would certainly not be enjoined entirely, if at all."

In this connection see *Georgia State B. & L. Asso.* v. *Savannah*, ante, 63; *Mutual Reserve Fund Life Asso.* v. *Augusta*, ante, 73. *Judgment affirmed. All the Justices concurring.*