# Richmond.

## ATLANTIC AND DANVILLE RAILWAY COMPANY v. SOUTHERN RAILWAY COMPANY.

### March 1, 1928.

1. LANDLORD AND TENANT—*Lease—Construction—Construed Against Grantor.*— The language of a lease is to be construed most strongly against the grantor.

2. LANDLORD AND TENANT—*Lease—Construction—Intention of Parties—Reference to Entire Instrument—Intention at Time Lease was Made.*— In construing a lease the intention of the parties must be ascertained by reference to the entire instrument and not to disjoined parts of it. The intention is at times of the utmost importance, but this intention must be that in being when the contract was made.

3. LANDLORD AND TENANT—*Lease—Lessor or Lessee to Pay Taxes—Income Tax—Case at Bar.*— The instant case arose upon the construction of a lease whereby plaintiff railroad leased its property to defendant railroad. The indenture was entered into after the decision of the Supreme Court of the United States that the income tax of 1894 was unconstitutional. Therefore, it could not reasonably be assumed that the Federal income taxes were in contemplation of the parties at the time of the lease in 1899. This is not a conclusive presumption, but it is highly persuasive.

4. INCOME TAX—*Distinguished from Other Taxes.*— An income tax is not similar to other forms of taxation, since it is not imposed upon property or business but upon the proceeds arising therefrom. An income tax is an assessment upon the income of the person and not upon any particular property from which that income is derived.

5. RAILROADS—*Lease—Consideration of Lease—Action by Lessor Against Lessee for Income Tax Paid on Consideration Received—Case at Bar.*— Plaintiff railroad leased its property to defendant railroad for a fixed rental and a contingent rental. Under the contingent rental clause, defendant was required to pay "a gross sum" that was 218/12000 of the sum total of the dividends paid upon its own common stock whose face value was then $120,000,000. This exact sum appeared from plaintiff's motion for judgment to have been paid, but plaintiff was compelled to pay a Federal income tax on this sum and brought its motion for judgment against defendant to re-

cover the amount of the income tax it had been compelled to pay. The sum to be paid plaintiff was "a gross sum" and the .plaintiff contracted to apply the same to the payment of its own stockholders by way of dividends "so far as may be lawful." From this it is apparent that the possibility of contingencies which would prevent an entire payment over was in the minds of the contracting parties. The contingent rental was to be paid at the same time that defendant paid dividends to its own stockholders. Plaintiff owned other property, so the income tax to be ultimately assessed against plaintiff was at that time "incalculable as to amount."

> *Held:* That defendant having paid all that it was required to pay, plaintiff could not recover the amount of the income tax it had been compelled to pay.

6. LANDLORD AND TENANT—*Lease— Construction— Intention.*— An omnibus expression of intention cannot override the plain language of the lease.

7. LANDLORD AND TENANT—*Lease—Lessee Undertaking to Pay Taxes— Unusual Taxes— Case at Bar.*— In the instant case defendant railroad leased the property of plaintiff railroad and in addition to the rental agreed upon agreed to assume and pay all lawful taxes, levies, charges and assessments which might be made upon the plaintiff railroad. While upon its face this would seem to cover all forms of taxation, yet the clause should not be construed to cover taxes unusual in character and unexpected in fact, such as a Federal income tax, when such taxes at the time of the lease had been declared unconstitutional by the Supreme Court of the United States.

8. LANDLORD AND TENANT—*Lease—Lessee's Agreement to Pay Taxes and Assessments— Income Tax.*— Unless a lease expressly provides for the payment of taxes on the income from rentals received under the lease, the imposition of such a burden on the lessee is not justified, and a. lessee's covenant to pay all taxes and assessments does not require him to pay an income tax which the lessor may be required to pay upon the rent received.

9. RAILROADS—*Lease—Consideration of Lease—Action by Lessor Against Lessee for Income Tax Paid on Consideration Received—Case at Bar.*— In the instant case plaintiff railroad leased its property to defendant railroad for a fixed rental and a contingent rental equal to a gross sum which should be equal to two hundred and eighteen twelve thousandths (218/12000) of dividends paid to defendant lessee's own common stockholders. The lease was entered into after the Supreme Court of the United States had decided that the income tax of 1894 was unconstitutional. When the lessor resumed payment. of dividends to its common stockholders it paid the lessee $81,700, that being 218/12000 of the dividends paid to its own common stockholders and on this gross sum lessor paid a Federal income-

tax of $10,218.75 and brought suit against the lessee for that sum. The lease stated that it was the intention that the common stockholders of the lessor should receive the same advantage by way of dividends as should be given to the common stockholders of the lessee. The lessor reserved certain property from the lease, upon the returns from which it was liable for income tax. The lessee agreed to pay taxes and assessments which might be made upon the lessor or upon the demised premises.

*Held:* That the lessor could not recover from the lessee the income tax levied upon the contingent rental.

Error to a judgment of the Circuit Court of the city ·of Norfolk.

*Affirmed.*

The opinion states the case.

*Baird, White & Lanning,* for the plaintiff in error.

*William Leigh Williams* and *Thos. B. Gay,* for the ·defendant in error.

HOLT, J., delivered the opinion of the court.

Error to a judgment of the Circuit Court of the city ·of Norfolk, in a proceeding by motion for judgment for money. Judgment for defendant. Plaintiff assigns ·error.

By an indenture of lease of date August 31, 1899, plaintiff demised and leased to the defendant for a period of fifty years certain of its lines of railroad, rights, franchises and appurtenances in consideration of a "fixed rental" which is now $109,000.00 per annum, and a certain "contingent rental," the language of the lease relative to it being:

"Whenever and as often as the Southern Company shall declare and pay a dividend upon or in respect to its present issues of common stock now outstanding to

the par value of $120,000,000.00, or upon or in respect of any substitutes therefor, the Southern Company at the same time shall also pay the Danville Company a gross sum which shall be equal to two hundred and eighteen twelve thousandths (218/12000) of the sum total of the dividend then paid upon or in respect of such $120,000,000.00 of common stock of the Southern Company or any substitutes therefor, but such contingent rental shall be paid upon the express understanding and covenant of the Danville Company, as special consideration moving the Southern Company to make said payments as aforesaid, that the gross sum so received by the Danville Company is by that Company to be used for and applied so far as may be lawful to the payment of dividends upon its common stock, which at no time is to exceed $2,180,000.00, it being the intention hereof that during the original term created by this indenture each of the 21,800 shares of common stock of the Danville Company shall receive the same advantage by way of dividends as shall be given to any of the one million two hundred thousand shares of the common stock of the Southern Company now outstanding, or its substitutes, proper adjustment to be made in case of any modification or conversion of said one million two hundred thousand shares; but no successor of the Southern Company, by foreclosure or sale, shall have any right to the benefits of this lease unless it shall make with the Danville Company, at the time of such succession, an agreement as to a contingent rental, thereafter to be paid by such successor, which shall be relatively equivalent, under the then existing conditions, to that herein agreed to be paid by the Southern Company."

From the operation of this indenture, plaintiff reserved certain warehouses and riparian rights in the city of Danville and continued its corporate existence.

This instrument is elaborate in its details, appears to have been drawn with the utmost care and contains many other covenants and agreements not, with exceptions to be noted, particularly pertinent to the issue here.

No contingent rental became due until 1924, when the defendant resumed payment of dividends to its own common stockholders and paid to the plaintiff $81,700.00, that being 218/12000 of the sum total of dividends paid to the defendant's own stockholders and was the exact sum which it had contracted to pay. Afterwards and on this gross sum so received, the plaintiff paid to the Federal Government an income tax of $10,218.75. It is this sum that the plaintiff in this action is seeking to recover over. With the motion for judgment is filed a copy of the lease. There was a demurrer which was sustained by the trial court. To that judgment a writ of error has been obtained and the issue so made is now before us.

In our approach, certain general principles are to be remembered.

[1, 2] The deed of lease is to be regarded in the light of the following well known rules of construction: (1) The language of the contract is to be construed most strongly against the grantor; and (2) The intention of the parties must be ascertained by reference to the entire instrument and not to disjoined parts of it. 2 Min. Inst. 1056, 1058.

In *Chamberlain* v. *Brown*, 141 Iowa 549, 120 N. W. 338, the court says: "There is another familiar rule applicable to cases of this kind that, if the meaning and effect of the lease be fairly capable of two constructions, that will be adopted which is most favorable to the lessee."

The intention of the parties is at times of the utmost

23

importance, but this intention must be that in being when the contract was made. Their present intention is entirely plain.

[3] The indenture of lease was entered into on August 31, 1899. In 1895, the Supreme Court of the United States had held in *Pollock* v. *Farmers Loan and Trust Company*, 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108, that the tax imposed by an act of Congress of 1894 (28 Stat. 509), so far as it fell upon the income of real estate and personal property, was a direct tax within the meaning of the Constitution of the United States (Article 1, sec. 9) and, therefore, unconstitutional and void. The sixteenth amendment to the Federal Constitution authorizing Congress to lay and collect taxes on income was not adopted until February 25, 1913, and it cannot reasonably be assumed that Federal income taxes were in contemplation of the parties in 1899. This is not a conclusive presumption, but it is highly persuasive. *Des Moines Union Railway Co.* v. *Chicago Great Western Ry. Co.*, 188 Iowa 1019, 177 N. W. 90, 9 A. L. R. 1557.

This tax paid by the plaintiff was assessed under section 230 of the United States revenue act of 1924 (26 U. S. C. A. sec. 981; U. S. Comp. St. sec. 6336 1/6N) providing that:

"In lieu of the tax imposed by section 230 of the revenue act of 1921, there shall be levied, collected and paid for each taxable year upon the net income of every corporation a tax of twelve and a half per centum (12½%) of the amount of the net income in excess of the credits provided in sections 236 and 263."

[4] The tax so levied "is not similar to other forms of taxation, since it is not imposed upon property or business but upon the proceeds arising therefrom. Black on Income and Other Federal Taxes, sec. 1. An

income tax is an assessment upon the income of the person and not upon any particular property from which that income is derived." *Young* v. *Illinois Athletic Club*, 310 Ill. 75, 141 N. E. 369, 30 A. L. R. 985.

In *Stony Brook R. Corporation* v. *Boston & M. R. R.* (Mass.), 157 N. E. 607, the court said:

"Doubtless income when received is property. But a tax on the income of a corporation is not imposed directly on its property but against the gain or revenue derived from its property. Income is something derived from property, labor, skill, ingenuity or sound judgment, or from two or more in combination. It is not commonly thought of as property but as gain derived from property, or some other productive source."

[5] Under this contingent rental clause, defendant was required to pay "a gross sum" that was 218/12000 of the sum total of the dividends paid upon its own common stock whose face value was then $120,000,000, and this exact sum appears from the plaintiff's motion to have been paid, and having paid all that it was required to pay it can be made to pay no more. This sum was "a gross sum" and the plaintiff contracted to apply the same to the payment of its own stockholders by way of dividends "so far as may be lawful," and so it becomes immediately apparent that the possibility of contingencies which would prevent an entire payment over was in the minds of the contracting parties. Upon the happening of such a contingency, the stockholders would necessarily receive net less than the gross sum paid over to their company and this distinction is emphasized by the fact that the word "gross" appears twice in this paragraph and distribution, as a matter of contract here and of general law, had to be made subject to paramount claims. This contingent rental had to be paid "at the same time" that the Southern Rail-

way paid dividends to its own stockholders. The Danville Company owned other property and so the income tax to be ultimately assessed was at that time "incalculable as to amount." *Bolling* v. *Stokes,* 2 Leigh (29 Va.) 178, 21 Am. Dec. 606.

[6, 7] Stress is laid upon this statement: "It being the intention hereof that during the original term created by this indenture each of the 21,800 shares of the common stock of the Danville Company shall receive the same advantage by way of dividends as shall be given to any of the one million two hundred thousand shares of the common stock of the Southern Company now outstanding." We have already seen that the parties recognize that it might at times be unlawful to do this, and, therefore, a gross sum sufficient for this purpose was all that was required by the contract. In fact, it would have been impossible to pay immediately a net sum adequate therefor. There was no way of telling what paramount lawful charges might be. Even if this were not true, omnibus expression of intention cannot override the plain language of the lease. No man can be required to pay more than he has contracted to pay. *Parke Building Company* v. *Yost Fur Company,* 208 Mich. 349, 175 N. W. 431. There is nothing in this paragraph which requires the defendant to pay more than it has paid, but it is said that it must be read in connection with that dealing with taxes and this is true. The provision relied upon by plaintiff to thus fortify its case is:

"That in addition to the annual and other rental hereinbefore provided for, it will assume and pay as they fall due and become payable all lawful taxes, levies, charges and assessments which may be made upon the Danville Company or upon the demised premises, during the term hereby created, and any and

all renewals thereof, by the United States or by any State, city, county, municipal or governmental author- ity, and likewise will assume and pay such proportion of all such lawful taxes, levies, charges and assessments for the current tax year in which this indenture is executed, as the portion of such year during which the Southern Company may be in possession and enjoy- ment of the demised premises under this indenture shall bear to the entire tax year.''

This casually and upon its face would seem to cover all forms of taxation, but such an embracing scope does not usually attach. In the beginning it will be observed that the taxes to be so paid are not those due by the Danville Company, but those assessments ''which may be made upon the Danville Company or upon the demised premises.''

We have been cited to no cases in Virginia directly in point, but *Bolling* v. *Stokes, supra,* illustrates the care with which such undertakings are scrutinized. In that case Stokes undertook to pay a certain ground rent for land and in addition ''besides all taxes and other public dues in any manner accruing upon the premises; which said rent should be paid half yearly, 'besides taxes and public dues of every kind.' ''

Against the lot so leased a paving tax was afterwards assessed. It was held that the lessee was under no obligation to pay it and the court in discussing the obligations which he had assumed said:

''To extend them to an expense unknown by the parties, incalculable as to amount, uncertain as to time, and in which the lessee could have no certain interest, would be to disregard all the circumstances under which the contract was made. It is impossible to suppose that a sum so uncertain in amount, and which might be as large as the sum that was in fact paid,

could have been taken into the calculation of the value
of the lot, at the time the lease was made.  There was
nothing by which it could be estimated, like the usual
and customary taxes and public dues; nor does it come
entirely within any correct definition of the terms
taxes or other public dues.  It was an uncertain and
extraordinary assessment."

It thus appears that our court stressed the conclusion
that this tax was unusual in character and unexpected
in fact.  At least with equal force this may be said of
the Federal income tax which had already been de-
clared unconstitutional by the United States Supreme
Court.

An examination of recent cases shows that kindred
issues have elsewhere frequently been considered.  *Des
Moines Union Ry. Co.* v. *Chicago Great Ry. Co., supra,*
is very much in point.  The Chicago Company, lessee,
undertook to pay "one-third of all taxes or assessments
special or otherwise, and public charges of every kind
and nature that shall or may be taxed or assessed
against the Des Moines Company or its property dur-
ing the aforesaid term of years."  There the obligations
assumed are certainly as broad as those in the case at
bar, but the court held that an income tax unlawful
when the lease was made could not have been in con-
templation of the parties and that a tax thereon to be
paid by the lessee was not required by the terms of the
covenant.  Among cases cited is *Bolling* v. *Stokes* and
the early case of *Van Rensselaer* v. *Dennison*, 8 Barb.
(N. Y.) 23, where it was said that an undertaking by
a lessee to pay "all ordinary and extraordinary taxes,
charges and assessments did not include an obligation
to pay taxes assessed against the landlord upon rents
due to him."  It will be seen that the court construed the
provision to pay all taxes assessed against the lessor as

meaning in substance and undertaking to pay all taxes "with respect thereto" of the demised premises, although this limitation did not in terms appear in the contract, a conclusion entirely reasonable. The court was of opinion that such was its intent and meaning and dealt with it as though that limitation had been inserted there. In some of the cases to which we will have occasion to refer this reservation is not expressly made but its presence adds nothing to a promise made in general terms to pay all taxes.

In *Parke Building Co.* v. *Yost Fur Co., supra,* the lessee undertook to pay in addition to the rent: "All rates, taxes, charges for revenue and otherwise, assessments, and levies, general and special, ordinary and extraordinary of every name, nature and kind whatsoever, including water rates, which may be taxed, charged, assessed, levied or imposed upon said premises, and upon any and all buildings and improvements thereon and any personal tax levied or assessed upon said party of the first part, which may be assessed, levied or imposed upon the leasehold estate hereby created."

These provisions did not cover an income tax.

In *Brainard* v. *New York Cent. R. Co.,* 242 N. Y. 125, 151 N. E. 152, 45 A. L. R. 751, there was this covenant before the court for construction:

"That it (Lake Shore Company) will in due season pay all taxes and assessments which may be levied or become chargeable on the said road or property, or upon the said Mahoning Company, by reason of its ownership thereof."

The court said:

"With monotonous frequency the courts have held in this connection that a tax on the rents of income of real property is not considered a tax on the property

itself.   When the lessee is to pay all taxes, ordinary and extraordinary, which shall be imposed on the demised premises or 'in respect thereof,' the taxes on rents is a tax not in relation to the property demised, but in relation to the income thereof.   *Woodruff* v. *Oswego Starch Factory,* 177 N. Y. 23, 68 N. E. 994."

[8] In *Illinois Central Ry. Co.* v. *Indianapolis Union Ry. Co.* (C. C. A.), 6 Fed. Rep. (2nd Series) 830, the court said:

"A lessee's covenant to pay all taxes and assessments does not require him to pay income tax which the lessor may be required to pay upon the rent received. *Jersey City Gas Co.* v. *U. G. Imp. Co.,* 58 Fed. 324, 7 C. C. A. 250 (3 C. C. A.); *Suter* v. *Jordan Marsh Co.,* 225 Mass. 34, 113 N. E. 580; *Young* v. *Illinois Athl. Ass'n,* 310 Ill. 75, 141 N. E. 369, 30 A. L. R. 985; *Des Moines Union Ry. Co.* v. *C. G. Ry. Co.,* 188 Iowa 1019, 177 N. W. 90 [9 A. L. R. 1557]; *Parke Building Company* v. *Yost Fur Company,* 208 Mich. 349, 175 N. W. 431; *Codman, et al.* v. *Am. Piano Co.,* 229 Mass. 285, 118 N. E. 344; *Woodruff* v. *Oswego Starch Factory,* 177 N. Y. 23, 68 N. E. 994.   In *Young* v. *Illinois Athl. Ass'n, supra,* the cases are reviewed and from them the court properly concludes: 'It has been the universal holding of courts considering the question, so far as we are able to find, that unless the lease expressly provides for the payment of taxes on the income from rentals received under the lease, the imposition of such a burden on the lessee is not justified.' "

Other cases might be cited but these suffice.   A lessee is never required to pay an income tax on rent unless he has entered into a compelling express contract.   In *Suter* v. *Jordan Marsh Co.,* 225 Mass. 34, 113 N. E. 580, a covenant to pay "all taxes and assessments whatsoever, except betterment taxes, which may be

levied for or in respect of the said leased premises, or
any part thereof, or upon or in respect of the rent
payable hereunder by the lessee howsoever or to whom-
soever assessed" was held to include the income tax
assessed upon the lessor on account of the rent received
under the lease, the court being of opinion that the
contract in express terms provided for such payment.
The same conclusion for the same reason was reached
in *Kimball* v. *Cotting*, 229 Mass. 541, 118 N. E. 866,
L. R. A. 1918C, 1189, and *Kimball* v. *Cotting*, 234
Mass. 172, 125 N. E. 551, while in *Codman* v. *Am.
Piano Co.*, 229 Mass. 285, 118 N. E. 344, it was held
that an agreement to pay "all taxes and assessments
whatsoever which may be payable for or in respect of
the leased premises during the term thereof except
assessments for betterments" imposed no such obliga-
tion, and to the same effect is *Stony Brook R. Corp.* v.
*Boston & M. R. R.* (Mass.), 157 N. E. 607, decided in
July, 1927.  These Massachusetts cases, in some of
which the right to impose the tax was upheld, and in
some denied, brings out clearly the fact that general as-
sumption of obligations to pay all taxes is not suffi-
cient.  The obligation to pay this particular tax must
be clearly stated.

[9] We, therefore, are of opinion that an agreement
to pay taxes and assessments "which may be made
upon the Danville Company or upon the demised
premises" does not cover an income tax levied in
circumstances such as are shown in the case in judg-
ment, and that the obligation to pay taxes was not
extended by undertakings in any other paragraph of
the indenture lease which have been fully performed.

The judgment of the lower court must be affirmed.

*Affirmed.*

McLemore, J., dissenting:

Finding myself in hopeless disagreement with the majority opinion I present the following as my reasons, therefore.

The decision of the case depends entirely upon the construction to be given certain clauses in the lease the meaning of which has been thought uncertain because of the imposition of an income tax imposed by the United States Government on the rental money paid by the Southern Railway Company to the Danville Company.

Both contracting parties intended that the stockholders of the two companies should during the life of the lease receive exactly the same treatment. This appears from an examination of clause II of the contract, an extract from which is as follows:

"It being the intention hereof that during the original term created by this indenture each of the 21,800 shares of the common stock of the Danville Company shall receive the same advantage by way of dividends as shall be given to any of the one million two hundred thousand shares of the common stock of the Southern Company now outstanding."

Now, if the intention of the parties is to control, then the case seems to me to have been improperly decided. The intention of the parties has been declared, and this fact takes the case out of the reasoning of a great many of the decisions quoted and relied upon by the defendant in error.

The authorities relied upon by defendant in error were all cases attempting to discover, from the language employed in the several contracts, the true intent and meaning of the contracting parties. Here the parties themselves have declared the meaning of the language employed and their interpretation should be respected.

This expressed intention of the contracting parties was attempted to be made doubly sure, by the insertion in the lease of the following clause intended to insure to the Danville Company a fund for distribution exonerated from all conceivable deductions:

"II. That in addition to the annual and other rental hereinbefore provided for it will assume and pay as they fall due and become payable, all lawful taxes, levies, charges and assessments which may be made upon the Danville Company or upon the demised premises, during the term hereby created, and any and all renewals thereof, by the United States or by any State, city, county, municipal or governmental authority."

There seems little else that could have been said to make certain that the stockholders of the Danville Company "shall receive the same advantage by way of dividends as shall be given to any of the one million two hundred thousand shares of the common stockholders of the Southern Company now outstanding."

All taxes, levies, charges and assessments laid upon the Danville Company by the United States Government or otherwise were to be absorbed by the Southern Company by direct covenant so to do, and yet the effect of the construction placed upon the lease by the opinion of the court allows the stockholders of the Southern Company to receive their dividend free of the tax, and the stockholders of the Danville Company to receive theirs subject to the tax—just exactly the result which the parties by a specific covenant had provided against.

The very object declared by the parties to be the purpose and effect of the lease—namely, to place the stockholders of both companies in a position of financial equality—has been clearly defeated by the decision of the court in this case.

Chinn, J., dissenting:

I can add nothing to the force of what Judge Mc- Lemore has said in his opinion, and hastily add the following thought as merely supplementary to what. I consider to be his unanswerable conclusions.

It appears to be conceded that at the time the con- tract of lease was made neither of the parties had in mind the specific possibility that an income tax might. be subsequently assessed against the Danville Com- pany or either of them. It may, perhaps, be also con- ceded that the covenant of the Southern Company to pay all taxes, assessments, etc., "which may be made upon the Danville Company," when the language of the covenant is considered by itself, imposes no obliga- tion upon the Southern Company to pay the tax now assessed upon the income of the Danville Company by the United States Government. Placing ourselves in the position then occupied by the contracting parties, however, and considering the object and purpose of the lease as gathered from the whole instrument when all its provisions are read together, it is apparent that the parties intended that the Southern Company should. pay all taxes of whatever character with which the Danville Company might be thereafter assessed or which might be imposed upon it, and intended by the comprehensive language employed in the covenant. above mentioned to provide for the payment by the Southern of all such taxes. Looking at this provision in the lease in the light of the general purpose of the contract and reading it in connection with the covenant. therein providing for the payment of the contingent rental, it seems to me clear that it was the intention of the parties that the common stockholders of the Dan- ville Company should receive their share of the net.

earnings declared by the Southern Company on the combined common stock of the two companies free from the imposition of any charges thereon in the nature of taxes or otherwise.

After providing that whenever the Southern Company shall declare a dividend upon its 120 millions of common stock, it should at the same time pay the Danville Company a sum equal to 218/12000 of the gross sum of the dividend paid on the 120 millions of the common stock of the Southern Company, the contract provides: "But such contingent rental shall be paid upon the express understanding and covenant of the Danville Company, as special consideration moving the Southern Company to make said payments as aforesaid, that the gross sum so received by the Danville Company is by that company to be used for and applied so far as may be lawful to the payment of dividends upon its common stock, which is at no time to exceed $2,180,000.00."

The holders of the common stock of both railroad companies had pooled their interests by and under the lease in the operation of the two railroads, but the Danville Company was to preserve its corporate existence throughout the term of the lease. It is, therefore, manifest that the above quoted provision was to insure to the common stockholders of the Danville Company the distribution among them by its proper authorities of their share of the total net earnings of the two corporations whenever the Southern Company should declare them for the benefit of its own stockholders. While a Federal income tax was not within the contemplation of the parties at the time, it is plain from the above provision that it was intended that the common stockholders of both railroads should stand on an equal footing under all contingencies and circum-

stances whenever the Southern Company undertook a distribution of these net earnings, and in order to avoid the possibility of any misunderstanding of the purpose of the contract in the event that any contingency such as this should arise which might under the intention of the parties be doubtful, the same covenant goes on to expressly declare the intention of the parties to be: "That each of the 21,800 shares of the common stock of the Danville Company shall receive the same advantage by way of dividends as shall be given to any of the 1,200,000 shares of the Southern Company now outstanding." This is not an "omnibus" declaration of intention but an express declaration of the purpose and intention of the parties as to how the net earnings at any time declared by the Southern Company were to be divided between the common stockholders of each company, and was put into the contract for the purpose of removing any doubt that might at any time arise as to the intention of the contract upon that specific point and no other. The intention thus declared cannot be ignored when plainly and positively declared for a specific purpose; more especially is this so when it is in harmony with the general purpose and scope of the contract and there is nothing in the contract inconsistent with it. To do so would be to make a contract which the parties themselves expressly declare they did not intend to make and which would be out of harmony with the purpose of the parties as disclosed by the general scheme of the instrument.

Stress has been laid upon the words "gross sum." I can see no significance in the use of word "gross," in the connection in which it is used. Taking into consideration the fact that the parties did not have the payment of an income tax in contemplation, the word could not have been used in reference to the payment

of such a tax, but simply meant that the dividend to be paid over to the Danville Company for distribution among its stockholders was to be paid by the Southern Company in one amount, and was used in the sense of "total sum" as applied to the dividend to be paid to the stockholders of the Southern Company.  I do not think the use of such a synonymous term should be employed as an argument to place a construction upon the contract which is contrary to the declared and manifest purpose of the parties themselves.  The decision of the majority of the court gives the holders of the common stock of the Southern Company an advantage in the payment of all such dividends as have been and may be declared by the leasing company during the life of the lease and its renewals, in violation of the express agreement between the parties as stated in their written contract.