No. 7615. April 16, 1930.

*S. W. Sturgis,* for plaintiff in error.
*C. C. Crockett* and *J. Glenn Giles,* contra.

FEATHERSTONE *v.* NORMAN, tax-commissioner.

No. 7571. APRIL 16, 1930.

378

*Randolph, Parker & Fortson, Alston, Alston, Foster & Moise, Little, Powell, Smith & Goldstein, Wright, Wright & Covington,* and *Lawrence & Abrahams,* for plaintiffs.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general, R. C. Norman, J. M. Pitner, Orville A. Park,* and *John A. Smith,* for defendant.

HINES, J. (After stating the foregoing facts.)

■ Can the legislature levy an income tax? It is clear that it can, unless the levy offends some provision of the constitution of this State. This instrument declares that "The right of taxation is a sovereign right, inalienable, indestructible, is the life of the State, and rightfully belongs to the people in all republican governments." Constitution, art. 4, sec. 1, par. 1 (Civil Code of 1910, § 6462). "The right of taxation, in the legislature, is without limit, except as provided in the constitution. It is not a power specially granted; it is assumed to exist, and is limited by special clauses." *Burch* v. *Savannah,* 42 *Ga.* 596, 599. "The power of the legislature to impose taxes is inherent, and is only circumscribed by the organic law." *State* v. *W. & A. R. Co.,* 136 *Ga.* 619 (71 S. E. 1055). "Income taxes are a recognized method of distributing the burdens of government, favored because requiring contributions from those who realize current pecuniary benefits under the protection of the government, and because the tax may be readily proportioned to their ability to pay." *Shaffer* v. *Carter,* 252 U. S. 37, 51

(40 Sup. Ct. 221, 64 L. ed. 445). The right to impose an income tax is an inherent right of the people. The grant of this power is not necessary to enable the legislature to exercise it. There is nothing in the constitution of this State which denies to the legislature the power to impose an income tax, if it is levied without infringing some provision of that instrument. So in this case the question is whether the income tax act of 1929 does offend against any provision of our organic law. The question for decision is, not whether this power exists, but whether it has been exercised in contravention of any provision of the constitution of this State.

■ Does the 1929 income-tax act of this State violate article 7, section 2, paragraph 1, of the constitution of this State, which provides that "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax"? Civil Code (1910), § 6553. The complaining taxpayer attacks the constitutionality of this statute, upon the grounds, among others, that (1) it is a tax on property and is not laid ad valorem, and (2) it is not uniform upon the same class of subjects. . Is income property within the meaning of that term as used in this provision of the constitution of this State? It is conceded that income in a general sense is property, but the specific question for decision is what is the meaning of the term "all property" as used in the above provision of our organic law. Is income property within the meaning of that provision? The City of Savannah under its charter was given the power to raise revenue "by a tax . . upon all real and personal estate" within the corporate limits of the city. Here the right was given to tax all real and personal property within the city limits. In construing this broad charter power this court held "A charter, authorizing a municipal corporation to tax real and personal estate, does not necessarily confer the right to tax income." *Mayor etc. Savannah* v. *Hartridge, 8 Ga.* 23. Why? Clearly because the language "all real and personal estate," although very broad and comprehensive, did not, without more, include income. Section .17 of article 1 of the constitution of 1868 declared that "taxation on property shall be ad valorem only, and uniform on all species of property taxed." Code 1873, p. 907. In *Waring* v. *Savannah, 60 Ga.* 93, this court dealt with the meaning of the word "property" as used in this provision of

the constitution of 1868. The court propounded and answered this question: "Is income property, in the sense of the constitution, and must it be taxed at the same rate as other property?" The answer to this question was, not that income was not property, but that it was not property in the sense in which that word was used in this provision of the constitution of 1868. But it·is said that this decision was made under the constitution of 1868, and not under the constitution of 1877. That is true; but it in no way affects the meaning of property as used in the taxing provisions in both instruments. The provision in the constitution of 1868 was this: "Taxation shall be ad valorem only, and uniform on all species of property taxed." Code of 1873, § 5019. The provision in the constitution of 1877 is as follows: "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax." A casual comparison of the two provisions discloses that the word "property" is used with the same meaning in both. There is nothing in either or both documents going to show that the meaning of "property" as used in the present constitution is different from its meaning as used in the constitution of 1868, or vice versa.

Stress is laid upon the use of the word "all" before the word "property" in this provision of the constitution of 1877. It is insisted that this provision embraces property of every kind and character, and that, as income is in a general sense property, this provision is applicable to a tax on income. The use of this word in this provision of the constitution of 1877 was not intended to enlarge and extend the meaning of the word "property" as used in the similar provision of the constitution of 1868. The purpose was to treat property subject to taxation as one single class, and to require the taxation of all property, not exempted by the constitution, at a uniform rate, and to empower the legislature to classify all subjects of taxation, exclusive of property, with power to tax or exempt any or all such classes, and in the case of taxation of any or all of such classes to impose a uniform rate upon the whole of each class taxed. *Verdery* v. *Summerville*, 82 *Ga.* 138 (8 S. E. 213); *Mayor &c. of Savannah* v. *Weed*, 84 *Ga.* 683 (11 S. E. 235, 8 L. R. A. 270); *Southern Bell Tel. &c. Co.* v. *Stewart*, 109 *Ga.* 80 (35 S. E. 73). This was the purpose of the framers of the constitution of

1877. By this provision it was intended to prohibit the legislature from exempting from taxation any property coming within the meaning of that word as used in the constitution of 1868, and construed in the previous decisions of this court. It was not intended to embrace in the property class all species of property. In *State* v. *W. & A. R. Co.*, 136 *Ga.* 619 (71 S. E. 1055), this court dealt with the lease act of 1889, which imposed a tax upon the income of the lessees arising from the operation of the State railroad. This tax was attacked by the lessees upon the ground that it was beyond the constitutional power of the legislature, under the provision of the constitution with which we have been dealing, to levy an income tax. This court held that the income tax, imposed by this act, was levied in the exercise of sovereignty, and that the provision of the constitution, with which we have been dealing, had no reference to the levying of a tax upon public property; but distinctly recognized the principle that "The power of the legislature to impose taxes is inherent, and is only circumscribed by the organic law." Under the above rulings of this court a tax upon income is not a tax upon property, within the meaning of that word as used in this provision of the State constitution.

This view is supported by the decisions of other courts. In Glasgow *v.* Rowse, 43 Mo. 479, the Supreme Court of Missouri held that an income tax did not come within the meaning of the term "property" as used in the constitution of Missouri, which enjoined a uniform rate in the imposition of taxes on all property. The question again came before that court in Ludlow-Saylor Wire Co. *v.* Wollbrinck, 275 Mo. 339 (205 S. W. 196). That court followed the earlier decision just referred to, and in commenting on the same said "The court held, in effect, that in directing, as the constitution does, that taxes on property should be levied according to value, reference was intended to be made to other species of property than that which a person has in his income; that the constitution did not abridge the power of the legislature to provide revenue by a taxation of income; that its command was directed to other and distinct classes of property, which on account of their peculiar nature could be measured in value, become the object of taxation independent of the owner, and were susceptible, by proper procedure, to lien or seizure for the enforcement of the tax. The court held that it was property having such a nature and characteristics, and

not the mere usufruct of such property, nor the earnings of physical or mental labor, which was referred to in the clause under review, and intended thereby to be subjected to taxation according to its value." Income does not constitute 'property in its proper sense. Dubuque *v.* Northwestern Life Ins. Co., 29 Iowa, 9. In Sims *v.* Ahrens, 167 Ark. 557 (271 S. W. 720), the Supreme Court of Arkansas held that "An income tax is neither a property tax nor a tax on occupations of common right," and that such a tax was not inhibited by the provisions of the constitution of Arkansas which required equality and uniformity in the imposition of taxes. This decision was followed in Stanley *v.* Gates, 179 Ark. 886 (19 S. W. (2d) 1000), in which the court held that an "income tax imposed by income-tax act of 1929 is not a property tax, and the act is therefore not violative of the equality and uniformity clause of the constitution." Again in Baker *v* Hill, (Ark.) 21 S. W. (2d) 867, it was expressly held that an income tax and a property tax are not one and the same thing. In Purnell *v.* Page, 133 N. C. 125 (45 S. E. 534), Chief Justice Clark, of the Supreme Court of North Carolina, said: "But the tax levied on income is not a property tax, but is a percentage laid on the amount which a man receives, irrespective of whether he spends it, wastes it, or invests it." In Hattiesburg Grocery Co. *v.* Robertson, 126 Miss. 34 (88 So. 4, 25 A. L. R. 748), the Supreme Court of Mississippi held "a tax on income to be paid by the recipient thereof without reference to whether he has invested, spent, or wasted it, as is the tax here in question, is not on the specific property from which the income was received irrespective of the person of the recipient, neither is a tax on the person irrespective of property; for no definition of income can be framed under which it can be dissociated from the activities of the person who produced or received it, so that a tax on income necessarily includes among its elements the production or receipt of property (State *v.* Wisconsin Tax Commission, 166 Wis. 287, 163 N. W. 639, 165 N. W. 470), and to that extent is a tax on the performance of an act resulting in gain to the person performing it; and the rule is . . that when the tax is imposed on the performance of an act, it will not be classified as a tax on property, although it is proportioned in amounts to the value of the property used in connection with or produced by the act which is taxed."

The Justices of the Supreme Court of New Hampshire, in an

opinion given to the legislature, said: "It may be said that the proposed tax is, in effect, an income tax. An income tax is generally understood to be a tax at an arbitrary rate—an excise tax. It has ever been held not to be a property tax (*Waring* v. *Savannah,* 60 *Ga.* 93; Glasgow *v.* Rowse, 43 Mo. 479), and to be a direct tax under the Federal Constitution (Pollock *v.* Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. ed. 759; Id., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. ed. 1108). But the fact that this tax in certain of its features resembles an income tax does not place it beyond the legislative power of classification." In re Opinion of the Justices, 77 N. H. 611 (93 Atl. 311). The Supreme Court of Wisconsin has held that an income tax is not levied upon and does not attach to property as such, but is on the recipient of the income, the tax being upon the right or ability to produce, create, receive, and enjoy, and not upon specific property. State *v.* Wisconsin Tax Commission, 161 Wis. 111 (152 N. W. 848); State *v.* Nygaard, 163 Wis. 307 (158 N. W. 87, L. R. A. 1917E, 563); State *v.* Wisconsin Tax Commission, supra. An income tax is an assessment upon the income of the person, and not upon any particular property from which that income is derived. Young *v.* Illinois Athletic Club, 310 Ill. 75 (141 N. E. 369, 30 A. L. R. 985); Atlantic & Danville Ry. Co. *v.* Southern Ry. Co. 149 Va. 701 (141 S. E. 770). "Income is something derived from property, labor, skill, ingenuity, or sound judgment, or from two or more in combination. It is not commonly thought of as property, but as gain derived from property, or some other productive source." Stonybrook R. Corp. *v.* Boston &c. R. R., 260 Mass. 379 (157 N. E. 607, 53 A. L. R. 700). Income in common parlance and in the law is used in contradistinction to property. 31 C. J. 397 (§ 2), B. "The term 'property,' as used in reference to taxation, means the corpus of an estate or investment, as distinguished from the annual gain or revenue from it. Hence a man's income is not 'property' within the meaning of a constitutional requirement that taxes shall be laid equally and uniformly upon all property within the State." Black on Income and other Federal Taxes (3d ed.), § 44. "Constitutional prohibitions and limitations applicable to property taxes are generally held not applicable to an income tax, unless the income tax is held to be a property tax. And even where an income tax is held to be a tax on property, the courts sometimes have failed to

apply such constitutional limitations to them. The better rule seems to be that an income tax is not a tax on property within a constitutional requirement that taxation on property shall be in proportion of its value." Cooley on Taxation (4th ed.), § 1751. We agree with what Chief Justice Lumpkin said in *Mayor &c. of Savannah* v. *Hartridge, supra,* to wit: "And the point to be decided is, not whether *income* may not, possibly, be comprehended under the general name of property, but whether such is its meaning, and such was the design of the legislature, in this act?" We agree further with him when he said that "The construction which would confound *income* with *property* in a tax law, is quite too refined and subtle, when designed to operate upon the public at large, and where they are supposed to be used in the senses belonging to the popular language of common life and every-day business." So we have reached the conclusion that a tax on income is not a tax upon property under our constitution, and that this conclusion is supported by the number and weight of the outside authorities.

Does this act infringe the uniformity clause of this provision of the constitution? The uniformity required is one "upon the same class of subjects," and not uniformity with the tax upon property. By this provision the makers of the constitution put property in one class and clothed the legislature with ample and full power to classify the subjects of taxation other than property. The legislature can not classify property, and impose upon one species thereof a different tax from that imposed on other species. Property subject to be taxed is treated as one single class, and there can be levied but one rate on all species of it. *Verdery* v. *Summerville, supra.* In other words, when the constitution or the legislature creates a class of subjects upon which a tax is imposed, it must be the same on each member of the class. The uniformity required applies to all kinds of taxes. *Mayor &c. of Savannah* v. *Weed, supra.* But such uniformity does not require that a tax upon all classes of subjects shall be the same or be uniform with the tax imposed upon property. In any class, the uniformity required is that a tax upon each member shall be the same. *Singer Mfg. Co.* v. *Wright,* 97 *Ga.* 114 (25 S. E. 249, 35 L. R. A. 497); *Wright* v. *Hirsch,* 155 *Ga.* 229 (116 S. E. 795). The power of the legislature to classify the subjects of taxation other than property is full,

and is subject only to the limitation that the classification must be reasonable and not arbitrary. So in *Joseph* v. *Milledgeville*, 97 *Ga.* 513 (25 S. E. 323), this court decided that a municipal ordinance imposing a business tax of one per cent. upon "all gross sales of goods, wares, and merchandise of every kind" was not obnoxious to the uniform clause of the provision of the constitution 1877 which we now have under consideration. The gross sales of the merchant are the gross income from his mercantile business. A tax upon the proceeds arising from the gross sales of merchandise comes much closer to being a tax on property than a tax on income comes to being a tax on property. This is so for the reason that the proceeds of the sale of merchandise stand in the place of the merchandise itself, being the merchandise in a converted form, while income from property is not in any sense the property from which the name is derived. Again in *Mutual Reserve Association* v. *Augusta*, 109 *Ga.* 73 (35 S. E. 71), this court ruled that "A tax imposed by a municipal corporation on the gross premiums of an insurance company doing business in the city where the tax is imposed is not a property tax in the sense of the constitution, so as to require the ad valorem system to be applied." The gross premiums of an insurance company are part of its gross income. In *Atlanta &c. Association* v. *Stewart*, 109 *Ga.* 80 (35 S. E. 73), it was held that "The tax of two and one half per centum on the gross receipts of express companies, imposed by paragraph 1 of section 9 of the general tax act of 1896, is an occupation or business tax, and not a property tax." The gross receipts of an express company are its gross income. In *Wright* v. *Southern Bell Tel. &c. Co.*, 127 *Ga.* 227, 229 (56 S. E. 116), this court said: "It is now well settled in this State that an occupation tax may be lawfully created by imposing a tax upon the gross earnings of a business." In these cases this court was dealing with the construction of the provision of the constitution of 1877 which we are now considering; and declared that the principle that a tax on gross income is not a tax on property, within the meaning of this provision, was well settled.

If, then, an occupation or excise tax can be levied upon the gross earnings of a business, and not violate this provision of the constitution, we see no reason why an income tax can not be imposed upon the net income of one receiving it, without violating the same, especially as a tax upon net income is more favorable to the tax-

payer, than one on gross income. But it is insisted that "a tax on net incomes is different," that net income "is what is left by which to measure the value of the property that has been devoted to a special use," and that a tax on it "is therefore a tax on the property." To support this proposition, counsel for the complainant rely upon the decision of the Supreme Court of the United States in Pullman Co. v. Richardson, 261 U. S. 330 (43 Sup. Ct. 366, 67 L. ed. 682). In that case the Supreme Court of the United States held that a State can neither tax the act of engaging in interstate commerce nor lay a tax on gross receipts therefrom, for the reason that a tax on either would be a restraint or burden on such commerce, and its imposition would be an invasion of the power of Congress to regulate interstate commerce. The ruling in that case was not a holding that a tax upon income was a tax upon the property producing it. "A State may, consistently with the Federal constitution, impose a tax upon the net income of property, as distinguished from the net income of him who owns or operates it, although the property is used in interstate commerce." A. C. L. R. Co. v. Daughton, 262 U. S. 413 (43 Sup. Ct. 620, 67 L. ed. 1051) ; Shaffer v. Carter, 252 U. S. 37 (40 Sup. 221, 64 L. ed. 445).

This act is not lacking in uniformity because it provides for a graduated tax and makes certain exemptions from such tax. As we have seen, the legislature can classify the subjects of taxation other than property. It can likewise subclassify them. McGhee v. State, 92 Ga. 21 (17 S. E. 276) ; Singer Mfg. Co. v. Wright, supra; Cook v. Marshall County, 196 U. S. 261 (25 Sup. Ct. 233, 49 L. ed. 471) ; Wright v. Hirsch, supra. A tax may be levied according to the number of drays, carriages, or wagons used in a business. Goodwin v. Savannah, 53 Ga. 410; Davis v. Macon, 64 Ga. 128 (37 Am. R. 60) ; Johnston v. Macon, 62 Ga. 645; Sawtell v. Atlanta, 138 Ga. 687 (75 S. E. 982). An occupation tax may be graduated according to population. Adams Motor Co. v. Cler, 149 Ga. 818 (102 S. E. 440). An occupation tax of one per cent. of the gross sales of a merchant can be levied. Joseph v. Milledgeville, supra. Barber-shops may be classified for taxation according to the number of chairs. Price v. Richardson, 159 Ga. 299 (125 S. E. 449). If an occupation tax can, under this provision, be graded according to the number of drays used in a business, or

according to population, or according to gross sales, or according to the number of chairs in a barber-shop, we can see no valid reason why an income tax can not be graded according to the amount of income received. Ordinarily the only uniformity required of a State income tax is uniformity within the class. An income-tax statute is not unconstitutional because it exempts incomes under a certain amount, or because it increases the rate as the income increases. To be uniform under this provision, taxation need not be universal. Certain objects may be made its subjects, and others may be exempted from its operation. Certain occupations may be taxed, and others not; but as between the subjects of taxation in the same class there must be equality. All that the law requires is that classification of persons who are to be exempt shall not be arbitrary and unreasonable. State v. Poydras, 9 La. Ann. 165; New Orleans v. Fourchy, 30 La. Ann. 910; Glasgow v. Rowse, Ludlow-Saylor Wire Co. v. Woolbrinck, supra. A statute is not unconstitutional because it exempts salaries of State officers, rentals of real estate, profits derived from agriculture, and incomes under a thousand dollars. State v. Pinder, 7 Boyce (30 Del.) 416 (108 Atl. 43). There may be a separate classification, with different rates, of individuals and corporations. Robertson v. Pratt, 13 Hawaii, 590; State v. Frear, 148 Wis. 456 (134 N. W. 673, 135 N. W. 164, Ann. Cas. 1913A, 1147, L. R. A. 1915B, 569); Black on Income and other Federal Taxes (3d ed.), § 44. The constitution of the State of Oregon provides that "all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." In Standard Lumber Co. v. Pierce, 112 Ore. 314 (228 Pac. 812), the Supreme Court of Oregon held that under this constitutional provision the legislature had power to classify incomes, and to subject recipients of such incomes to tax thereon at rates which increase progressively as amount of taxable income increases.

Having reached the conclusion that a tax on income is not a tax on property in the sense of that term as used in our constitution, and that for this reason a tax on income is not required to be laid ad valorem, and having reached the further conclusion that an income tax can be graded by the legislature in exercising its power of classification of incomes for taxation, and that the uniformity required is a uniform rate upon all incomes within the class created,

the situation is the same as if the power to classify and grade income taxes were constitutionally granted. It then necessarily follows that it is for the legislature to determine what amount of income shall be exempt, and to fix the method and ratio of graduation. Alderman v. Wells, 85 S. C. 507 (67 S. E. 781, 27 L. R. A. (N. S.) 864, 21 Ann. Cas. 193) ; State v. Frear, supra. Applying the above principles, does this act violate the uniform provision of taxation provided by the constitution? We have set out this act in full in the statement of facts preceding this opinion. It creates a class of net taxable income. Upon the net income of any taxpayer, except insurance companies, which pay to the State a tax on premium income, after making such deductions as are allowed by the laws of the United States in the system by them adopted for determining net incomes, and with such incomes and deductions as are by this act provided for a proper taxable income, there shall be levied and collected by the State an income tax similar to that of the United States, but at the rate and according to the scale set out in this act. This income tax is to be returned, calculated, ascertained, and paid according to the system and rules in this act set out. Whenever a taxpayer makes an income-tax return to the United States, or is legally bound to do so, it shall be his duty to make at the same time a like return to the State and file the same with the tax commissioner for the purpose of the State tax on income. Such duplicate return shall furnish the same information as is contained in his return to the United States, shall be made on a blank form to be furnished by the tax commissioner, and he shall ascertain the taxable net income in the same way as in the return to the United States; but in ascertaining the net income taxable by the State, certain changes shall be made. To the amount ascertained under the laws of the United States as the net income taxable by the general government there shall be added in said return the gross amount of any salary received by the taxpayer during the tax year as a public official or employee of the State, or of any county, municipality, or other political division thereof, and the net amount of any fees, perquisites, or other emoluments from said sources or any of them, paid to him for official compensation, except in the cases of the Governor of the State, and of the several Judges of the Supreme Court, the Court of Appeals, and the superior courts, who shall not be required to include their salaries

paid or accruing for any term existing at the time of the passage of this act. Then from the net amount so ascertained as the taxable -net income of the taxpayer there shall be deducted any salary paid to the taxpayer by the United States, or coming to him from the same source as an official for any service rendered by him to the United States, and any and all interest paid to him on any bond or bonds or other obligations of the United States. If neither of the above changes are made, the net income taxable by the State shall be the same as that taxable by the United States, and the tax payable thereon to the State shall be one third of that payable to the United States. In case the net taxable income is changed as above, the tax payable to the State shall be increased or reduced so as to be one third of what would have been payable to the United States under their laws upon such increased or reduced taxable net income. In case any taxpayer makes no tax return to the United States because of having no sufficient income taxable by them, but would have such sufficient income if his salary, fees, or perquisites from the State or subdivision thereof were taxable by the United States, he is required to make to the State of Georgia an original return on the same or similar form as would be used in making a duplicate return as above required. In such case the tax liability to the State shall be one third of what it would be to the United States if said income were by them taxable.

Here this act makes its own classifications of taxable net income. In doing so it authorizes the same deductions to be made as the taxpayer makes in his income-tax return to the United States. This simply adopts the deductions allowed under the Federal statute. After a most careful study and consideration of this act, we are of the opinion that this classification is not unreasonable or arbitrary, and that the method provided for determining the net taxable income of the taxpayer is reasonable and not arbitrary. Furthermore, the exemptions to be made from gross income are neither unreasonable nor arbitrary. The first exemption to be made is in cases of insurance companies which pay to the State a tax on premium income. It can not be said that this exemption is unreasonable or arbitrary. It prevents double taxation. The next exemption embraces the salaries of the Governor, and of the several Judges of the Supreme Court, the Court of Appeals, and the superior courts. This exemption is likewise reasonable and not arbitrary.

Again this act exempts from taxation any salary paid to the taxpayer by the United States, or from the same source, emoluments, or fees paid for any service rendered by him to the United States, and any and all interest received by him on any bond or bonds or other obligations of the United States. Clearly this exemption is reasonable and not arbitrary, for the reason that the salaries and emoluments of officers and employees of the United States are not subject to taxation by the State. So this act does not violate the uniform provision of the constitution, with which we are dealing, because the classification does not embrace all earners of income, and because of the exemptions above specified. It follows that it neither violates the ad valorem nor the uniform provision of the constitution of this State upon the subject of taxation. We do not think that this conclusion conflicts with many of the outside authorities cited by counsel for the complainant; but in those cases where there is such conflict, we believe that the conclusion reached by us embodies the correct principle. After a careful consideration of the able argument of counsel for complainant, and the authorities cited in its support, we have not been able to reach a different conclusion from that expressed above. While this is so, we wish to refer to some of the authorities cited to support the contrary conclusion. Counsel for complainant stresses the decisions in *Johnston* v. *Macon*, 62 *Ga.* 645, and *O'Neal* v. *Siloam*, 147 *Ga.* 420 (94 S. E. 238), as supporting a contrary conclusion to that reached by us in this case. In those cases there was no classification of subjects for taxation. The taxes were imposed on the business of merchandising measured by the value of the gross sales of merchants. The taxes were laid according to value, but at a different rate from that imposed on property generally. If there had been a classification of merchants according to the amount of the business done, and a tax of a given percentage had been levied upon the members of each class, a very different question would have been presented for decision; and we feel sure a different result would have been reached. The tax ordinances involved in those cases did not make a classification, and did not levy a uniform rate on each member of the class.

To support the conclusion contrary to that which we have reached, counsel for complainant rely upon the decisions in Brown *v.* Maryland, 12 Wheat. 419 (6 L. ed. 678) ; Welton *v.* Missouri, 91

U. S. 275 (23 L. ed. 347); and *Kehrer* v. *Stewart*, 117 *Ga.* 969 (44 S. E. 854). These decisions dealt with license taxes imposed upon dealers in imported goods, and dealt with statutes which required the license taxes to be paid and licenses obtained before the goods could be sold within the States into which they were imported. It was held in those cases that these were taxes upon the goods themselves, or, more properly speaking, were burdens upon interstate or foreign commerce. Again, counsel for complainant rely upon the decisions in Northwestern &c. Co. *v.* Wisconsin, 275 U. S. 136 (48 Sup. Ct. 55, 72 L. ed. 202); and National &c. Company *v.* U. S., 277 U. S. 508, 521 (48 Sup. Ct. 591, 72 L. ed. 968). In the first of these cases an annual license fee consisting of three per cent. of the gross income of the company was exacted. A portion of this gross income was derived from United States bonds, which were tax exempt; and it was held that this amounted to imposing a tax upon the bonds themselves, which could not be imposed by the State. In the second case the court was dealing with the Federal revenue act of 1921, providing for the taxation of the gross income of a life-insurance company. The company owned certain tax-free securities. The court held that the direct taxation of the income from securities amounted to taxing the securities themselves. In Macallen *v.* Massachusetts, 279 U. S. 620 (49 Sup. C. 432, 73 L. ed. 874), the court dealt with the statute of Massachusetts, which levied a tax on the corporate privilege of doing business, measured in part by the amount of interest received from non-taxable securities; and the court held that the tax was invalid, because in effect it was a tax on the securities from which the income was derived. The court was dealing with the principle that governmental securities were free from taxation, and held that taxes upon income from them amounted to taxing the securities themselves. These decisions do not require a holding that the language "all property" in the provision of our constitution embraces income as well as corpus, in view of the previous construction put upon this language by this court. Counsel for complainant rely upon certain other decisions of the Supreme Court of the United States, to which we shall now refer. In Pollock *v.* Farmers Loan & Trust Co., 157 U. S. 429 (15 Sup. Ct. 673, 39 L. ed. 759); Id., 158 U. S. 601 (15 Sup. Ct. 912, 39 L. ed. 1108), the Supreme Court of the United States was dealing with the question whether

the incomes from real estate and from personal property were direct taxes within the meaning of that provision of the Federal constitution which requires that direct taxes must be laid in proportion to the population of the several States; and by a decision of five Justices to four that court held that taxes upon the income from both of these sources were direct taxes within the meaning of the provision of the constitution of the United States, which requires direct taxes to be laid in proportion to population. In that case the court was dealing with the meaning of direct taxes in the above provision of the Federal constitution. This decision is not authority for the proposition that income is property within the meaning of the provision of our State constitution which requires taxation to be ad valorem and uniform upon each class of subjects upon which taxes are laid.

Counsel for complainants lay stress upon the decision in Eliasburg Mercantile Co. v. Grimes, 204 Ala. 492 (86 So. 56, 11 A. L. R. 300). In that case the Supreme Court of Alabama reached a conclusion different from that we reach in this case. That court held that income was property within the meaning of a constitutional provision limiting the tax rate to a certain percentage of the value of the taxable property within the State. This conclusion was based upon the general and broad meaning of the word property, which embraces all objects and rights which are capable of ownership. That court relied upon the decision in Pollock v. Farmers Loan & Trust Co., supra, as a case "not strictly in point . . for present purposes, but" as "persuasive to show the advanced, and now generally accepted, modern view as to the nature of income, and the theory of its taxation." It must be borne in mind that the Pollock case was decided by a divided court; and it seems to us that the dissenting opinions of Justices White and Harlan in that case are unanswerable. We agree with the Supreme Court of Alabama that it is not in point in deciding the question with which we are dealing. We do not believe that it is persuasive for that purpose. The question for decision in that case was whether the imposition of an income tax was direct or not. It seems unreasonable to hold that a tax on income is a direct tax upon the property from which the income flows. Such a tax is one on the property only indirectly. It is direct upon the income, but indirect upon the property. The Supreme Court of Alabama again

bases its decision upon the Massachusetts cases. In an opinion given by the Justices of the Supreme Court of Massachusetts to the legislature of that State it was said: "A tax upon the income of property is in reality a tax upon the property itself. Income derived from property is also property. Property by income produces its kind; that is, it produces property and not something different." In re Opinion of Justices, 220 Mass. 613, 624 (108 N. E. 570). Undoubtedly income is in a very vital sense a property right; but when we speak of a man's income, we do not refer to the same as his property. In common parlance and in the law, as we have seen, income is used in contradistinction to property. The proposition that taxation on income is taxation on property from which it comes involves the assertion that the two taxes are imposed upon the same subject. The Supreme Court of Alabama in its decision recognizes that income in existence at the time required by the Alabama statute for the return of property is subject to a separate assessment for taxation. So both the property from which the income comes, and the income itself, are subject to separate assessment for taxation. The two are separate and distinct things. The taxation of one is not the taxation of the other. The assertion that the tax on one is a tax on the other is a fanciful conceit to which we can not agree.

■ It is insisted that this statute violates article 7, section 1, paragraph 2, of the constitution of this State, in that the same imposes a tax on property in excess of "five mills on each dollar of the property taxable in the State." Having determined that this act does not impose a tax on property, this objection is without merit, and need not be further considered.

■ It is next urged that this law violates art. 3, sec. 1, par. 1, of the constitution of Georgia, which provides that "The legislative power of the State shall be vested in the General Assembly." The specific ground of this attack is that this act undertakes to vest in Congress, and administrative bureaus and boards of the United States, the power to fix and determine the rates of taxation, exemptions therefrom, the subjects thereof, the classifications of incomes for purposes of taxation, and to promulgate rules and regulations touching features of the administration of this legislation. These objections are without merit. The only color for this contention is that this act provides for the levy and collection of a State income

tax similar to that of the United States, adopts certain existing features of the Federal income tax in arriving at the net taxable income of the taxpayer under it, and makes, along with other exemptions of its own, those allowed by the income tax act of the general government. It will thus be seen that this act does not delegate to Congress and its instrumentalities the power to fix and determine rates of taxation, the exemptions therefrom, the subjects thereof, and to promulgate rules and regulations touching administrative features of the act. All these things are done by the State itself. The Georgia legislature fixes the rate of tax which a taxpayer shall pay. This is one third of the amount of the tax which he pays or would pay to the Federal government upon the bases above stated. The legislature makes certain exemptions from the payment of this tax. It names and specifies these exemptions. The legislature makes or provides for the making of the rules and regulations relating to the administration of this act. This act merely adopts the Federal method of calculating net income under the Federal statute as the State's method of accomplishing that result. The mere adoption of the method fixed by the Federal law is not vesting in Congress the power to create the State's method. It adopts existing exemptions and an existing method in determining in part the net taxable income of the taxpayer. Adoption of existing exemptions and an existing method is not a delegation to Congress of the legislative power of the State. Santee Mills v. Query, 122 S. C. 158 (115 S. E. 202). This act in no way undertakes to make future Federal legislation a part of the law of this State upon that subject. When a statute adopts a part or all of another statute, domestic or foreign, general or local, by specific and descriptive reference thereto, the adoption takes the statute as it exists at that time. The subsequent amendment or repeal of the adopted statute or any part thereof has no effect upon the adopting statute. 25 R. C. L. 875, 907, §§ 120, 160; 36 Cyc. 1152; 26 Am. & Eng. Enc. Law (2d ed.), 714; Kendall v. U. S. 12 Pet. 524 (9 L. ed. 1181). Prior acts may be incorporated in a subsequent one by terms or by relation; and when this is done, the repeal of the former leaves the latter in force, unless also repealed expressly or by necessary implication. The adoption of a general law does not carry with it the adoption of the changes afterwards made in such law. In re Heath, 144 U. S. 92 (12 Sup. Ct. 615, 36 L. ed. 358). An act adopting

by reference all or a part of another statute means the law as existing at the time of the adoption, and does not adopt any subsequent addition thereto or modification thereof. Endlich, Interpretation of Statutes, 115, § 85.

So it follows that there is no delegation of legislative power to Congress in these respects. The legislature fixes the class subject to the income tax. It establishes the rate to be paid by the taxpayer. It provides for certain exemptions therefrom, and makes or provides for the promulgation of rules and regulations necessary and proper for the administration of this act. What the legislature does is to impose an income tax, made up in part by the net income tax paid by the taxpayer to the United States, and in part of additional income from non-taxable income under the Federal income tax. It makes a class of income taxpayers composed of persons who have a net income equal to that fixed by the general government, and levies a tax on such income equal to thirty-three and one third per cent. of that which Congress levies on net income under the United States income-tax statute. All this is the handiwork of the Georgia legislature. In this work Congress takes no hand. So this act in no way delegates to Congress the legislative power of the State. If the legislature had adopted all the features of the Federal act, this would not be delegating its power to Congress. By the act of 1784, the Georgia legislature adopted the common law of England and such of the statute laws of that country as were usually in force in the province of Georgia on May 14, 1776. Cobb's Digest, 775. This did not in any way delegate to England the legislative power of Georgia. There is nothing to the contrary of what we hold in *Green* v. *Atlanta,* 162 *Ga.* 641 (135 S. E. 84). In that case this court was dealing with an ordinance which by its first section provided that the members of the fire department should be paid the salaries paid by the United States to its mail carriers in the City of Atlanta, and which by its second section provided that should the salaries of the mail carriers be increased in the future the salaries of the members of the fire department should be increased accordingly. This court held the first section of the ordinance valid, it being merely the adoption of congressional legislation; but that the second section of the ordinance was void, because it was a delegation by the city of its legislative power to Congress.

■ The next objection to this act is that it undertakes to deprive the courts of Georgia of the power of construing its own laws, in that the amount of the tax payable to the State is determinable solely by reference to the present and future laws of the United States, a construction of which rests exclusively in the courts of the United States; and that thus the courts of Georgia are rendered impotent to construe and give effect to this act, in violation of article 6, section 1, paragraph 1, of the constitution of this State, which provides that "The judicial powers of this State shall be vested in a Supreme Court, a Court of Appeals, superior courts, courts of ordinary, justices of the peace, commissioned notaries public, and such other courts as have been or may be established by law." None of these direful consequences follow from the enforcement of this tax act. It does not undertake to deprive the courts of Georgia of the power of construing its own laws. On the contrary this act makes ample provision, in sections 7, 8, and 9, for the determination of any controversy which may arise between the State and the taxpayer in the enforcement of this statute. By section 7 the taxpayer can appeal to the Board of Tax Review for the assertion of any claim to which he thinks he is entitled. Under section 8 an appeal may be taken from the decision of this board by the State or the taxpayer to the superior court, where a speedy trial is provided for; and by section 9 the judgment of the superior court may be reviewed by writ of error as in all other civil cases. In these judicial proceedings the courts of this State can construe its own laws and enforce the same. The contention that the construction of this statute rests exclusively with the courts of the United States is not well founded. These courts have no jurisdiction to hear and determine any controversies arising under this act, unless this act is attacked upon the ground or grounds that it violates some provision or provisions of the constitution of the United States. The real situation is that the State has adopted the method provided by the Federal statute for determining in part the taxable income of the taxpayer under this statute. That the State adopts the Federal method of arriving at the taxable income of the taxpayer, and makes such method its own, does not in any way deprive the State courts of the power of construing this act.

■ This statute does not undertake to levy a poll tax, and is not

therefore violative of art. 7, sec. 2, par. 3, of the constitution of this State, because it is not levied for educational purposes, and exceeds $1 annually upon each poll.

■ By the Federal income-tax act it is made unlawful for any person to print or publish, in any manner whatever not provided by law, any income-tax return or any part thereof, or source of income, profits, losses, or expenditures appearing in any income tax return. U. S. C. A. title 26, c. 19, § 1025. In the first place, the making of the returns required by this act is not such printing or publishing of the taxpayer's Federal tax return as is prohibited by this Federal statute. By this act he is simply required to make a return giving the same information as he gives or is required to give in making his Federal tax return. In the second place, the printing or publishing of such return must be in a manner not provided by law. Clearly this act requires the taxpayer to give the information called for by it; and in doing so he would in no sense be printing or publishing his Federal return in a manner not provided by law. State governments have the power to provide that returns made to its officers to be used in assessing and collecting income taxes shall not be revealed by the officers. In re Valecia Condensed Milk Co., 240 Fed. 310. This is a matter resting in the discretion of the lawmaking departments of the State governments. Furthermore, requiring the taxpayer to give the same information in his return to the State of his taxable income as he makes in his return to the Federal government is not such a printing or publication of his Federal income tax return as is prohibited by this act of Congress. Anyway the making of the State return is provided by law, and does not fall within the inhibition of this Federal statute. Furthermore, this act does not provide for the printing or publication in any manner of the taxpayer's Federal income tax return. So we are of the opinion that this statute does not conflict with the above Federal statute, and does not violate art. 6, par. 2, of the constitution of the United States, which declares that "This constitution, and the laws of the United States which shall be made in pursuance thereof, shall be the supreme law of the land."    *Judgment affirmed.   All the Justices concur.*